IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DANIEL COBB, et al.,
Plaintiffs,

v.

UNITED STATES OF AMERICA, et al.,
Defendants.

CASE NO. 24-2392-JPG


COVER SHEET #1

This Package Contains the Original Complaint,
and the First Part of Exhibits.
In Addition This Package Contains the
Motion and Affidavit To Proceed in District Court
Without Prepaying Fees or Costs,
With a Copy of Account Transactions
For Plaintiff, Daniel Cobb, attached.

SENT CERTIFIED MAIL using Tracking # 7021 2720 0001 8200 1287

# UNITED STATES DISTRICT COURT

for the
Southern District of Illinois

DANIEL COBB, INDIVIUAL, AND THIRD PARTY, ON BEHALF OF LUCILA URBANEJA, (WIFE) AND THIRD PARTY OF J.C., (Adult Daughter),

*Plaintiff(s)/Petitioner(s)*

v.

UNITED STATES OF AMERICA; DANIEL SPROUL, WARDEN; R. McCAFFREY, A.W.; MICHELLE DAWN, C.M.C.; R. BLAIR, S.I.S. LT.; LINDSAY OWINGS, PhD;

*Defendant(s)/Respondent(s)*
(Additional Defendants listed on Page 1-A.)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: _____
(*Clerk's Office will provide*)

24-2392-JPG

☐ CIVIL RIGHTS COMPLAINT
pursuant to 42 U.S.C. §1983 (State Prisoner)
☒ CIVIL RIGHTS COMPLAINT
pursuant to 28 U.S.C. §1331 (Federal Prisoner)
☒ CIVIL COMPLAINT
pursuant to the Federal Tort Claims Act, 28 U.S.C.
§§1346, 2671-2680, or other law
XX 5 U.S.C. §§ 701-706; 18 U.S.C. §§ 3625, 3626; 5 U.S.C. §§ 552a, 2302(b)(8)(A); and 42 U.S.C. § 1997d

## I.    JURISDICTION

**Plaintiff:**

A.    Plaintiff's mailing address, register number, and present place of confinement.

Federal Correctional Institution - MARION
P.O. BOX 1000
Marion, IL 62959

Registration Number 24773-171  /  F.C.I. - MARION , in Illinois

**Defendant #1:**

B.    Defendant <u>United States of America</u> is employed as
                           (a)       (Name of First Defendant)

<u>Owner of Bureau of Prisons Agency</u>
                           (b)       (Position/Title)

with <u>Bureau of Prisons Headquarters in Washington, D.C.</u>
                           (c)       (Employer's Name and Address)

_____

At the time the claim(s) alleged this complaint arose, was Defendant #1 employed by the state, local, or federal government?    ☒ Yes    ☐ No

If your answer is YES, briefly explain:
The United States of America is the proper Defendant pursuant to Title 28 U.S.C. §§ 1346, 2671-2680, for the actions of Federal Employees done in the scope of their employment for the Federal Government

Rev. 7/20/18                                                          1

Defendant(s)/Respondent(s) (Continued)

Jennifer Weber, PhD; Unknown Huggins, S.I.S. Agent; Edgardo Cosme, RN;
Unknown Albright, SHU C/O; Unknown SHU C/O; T. Robertson, Supervisor of Education;
Unknown Huckleberry, Lieutenant; Unknown Austin, C/O; Unknown Hearn, C/O;
R. Humphries, UNICOR Director; Antonietta Estrada, DHO; Amanda Stangl, CMC;
Colette S. Peters, BOP Director; Unknown (acting) Western Regional Director,
[A.K.A. " LS "]; D. Verdugo, Unit E-1 Correctional Officer; C. Cadena, Property Officer;
C. Gauthier, Psy. D., Sex Offender Management Program ("SOMP") Coordinator

Section I. JURISDICTION (CONTINUED)

A-1:  Name: Lucila Urbaneja (Third Party)
    Address: Unknown

A-2:  Name: J. C.  (Third Party)
    Address: Unknown

- 1-A -

**Defendant #2:**

C.   Defendant <u>Daniel Sproul</u> is employed as

(Name of Second Defendant)

<u>Warden for Federal Correctional Institution - MARION</u>

(Position/Title)

with <u>Bureau of Prisons Agency</u>

(Employer's Name and Address)

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government?   ☒ Yes   ☐ No

If you answer is YES, briefly explain:
Daniel Sproul is the C.E.O. (Warden) of F.C.I. - MARION, and is responsible for all employees under his postition.

**Additional Defendant(s) (if any):**

D.   Using the outline set forth above, identify any additional Defendant(s).

3. Defendant R. McCaffrey is employed as Associate Warden at F.C.I. - MARION, Illinois.
4. Defendant Michelle Dawn is employed as Case Management Coordinator at F.C.I.-MARION, IL.
5. Defendant R. Blair is employed as Special Investigations Services Lieutenant at F.C.I. - MARION, in Illinois.
6. Defendant Lindsey Owings is employed as Chief Psychologist at F.C.I. - MARION, in Illinois.
7. Defendant Jennifer Weber is employed as Psychologist at F.C.I. - MARION, in Illinois.
8. Defendant Unknown Huggins is employed as S.I.S. Agent at F.C.I. - MARION, in Illinois.
9. Defendant Edgardo Cosme is employed as Registered Nurse at U.S.P. - TUCSON, in Arizona.
10. Defendant Unknown Albright is employed as Correctional Officer at U.S.P. - TUCSON, in Arizona.
11. Defendant Unknown Special Housing Unit Officer is employed as Correctional Officer at U.S.P. - TUCSON, in Arizona.
12. Defendant T. Robertson is employed as Supervisor of Education at F.C.I. - MARION, in Illinois.
13. Defendant Unknown Huckleberry is employed as Operations Lieutenant at F.C.I.-MARION, in Illinois.
14. Defendant Unknown Austin is employed as Correctional Officer at F.C.I. - MARION, in Illinois.

(Continued on P.2-A)

ADDITIONAL DEFENDANT(S): (Continued)

15. Defendant Unknown Hearn is employed as Correctional Officer at F.C.I. - MARION, in Illinois.
16. Defendant R. Humphries is employed as UNICOR Director at F.C.I. - MARION, in Illinois.
17. Defendant Antonietta Estrada is employed as Disciplinary Hearing Officer (DHO) at U.S.P. - TUCSON, in Arizona.
18. Defendant Amanda Stangl is employed as Case Management Coordinator (CMC) at U.S.P. - TUCSON, in Arizona.
19. Defendant Colette S. Peters is employed as BOP Director with the Bureau of Prisons.
20. Defendant Unknown (acting) Western Regional Director at Western Regional Office in in Stockton, California.
21. Defendant D. Verdugo is employed as Correctional Officer at U.S.P. - TUCSON, in Tucson, Arizona.
22. Defendant C. Cadena is employed as Property Officer at U.S.P. - TUCSON, in Tucson, Arizona.
23. Defendant C. Gauthier is employed as Sex Offender Management Program ("SOMP") Coordinator, Psy.D. at F.C.I. - MARION, in Illinois.
24. Defendant Joshua Gregory is employed as DTS at F.C.I. - MARION in Illinois.

## II.   PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?  ☒Yes  ☐No

B.   If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline.  You must list ALL lawsuits in any jurisdiction, including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)). FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

1.   Parties to previous lawsuits:
     Plaintiff(s):
Daniel Cobb

     Defendant(s): Catricia Howard, K. Werner, L. Unruh-Parker, M. Mitstifer, Edna Lara, Amanda Stangl, A. Gallion, James Hayden, D. McNamera, Amy Moraila, C. Cole, Antonietta Estrada, K. Garcia, Lorri Mitchell, Unknown Diabueno, M. Mack, D. Madrid, Ann Ash, S. Waite, S. Bass, B. Schuler, C. Schuler, J. Williams, J. Alexander, J. Cox, V. Ramsey, S. Johnson, and others.

2.   Court (if federal court, name of the district; if state court, name of the county): District Court of Arizona

3.   Docket number:  4:21-cv-00241-TUC-JAS

4.   Name of Judge to whom case was assigned: James A. Soto

5.   Type of case (for example: Was it a habeas corpus or civil rights action?): Civil Rights Action

6.   Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Dismissed; Appealed; Appeal is pending.

7.   Approximate date of filing lawsuit: June 4, 2021

8.     Approximate date of disposition: District Court dismissed on
April 5, 2023

9.     Was the case dismissed as being frivolous, malicious, or for failure to
state a claim upon which relief may be granted and/or did the court
tell you that you received a "strike?"  Dismissed as MOOT.

III.    **GRIEVANCE PROCEDURE**

A.     Is there a prisoner grievance procedure in the institution? ☒ Yes    ☐ No

B.     Did you present the facts relating to your complaint in the prisoner
grievance procedure?                                                    ☒ Yes    ☐ No

C.     If your answer is YES,
1.     What steps did you take?
Plaintiff filed Informal Resolution(s) - BP-8(s); Administrative Requests - BP-9(s);
Regional Appeals - BP-10(s); and Central Office Appeals - BP-11(s) for all issues.

2.     What was the result?
All BP-8(s), BP-9(s), BP-10(s), and BP-11(s) were denied.

D.     If your answer is NO, explain why not.

E.     If there is no prisoner grievance procedure in the institution, did you
complain to prison authorities?                                        ☐ Yes    ☐ No

F.     If your answer is YES,
1.     What steps did you take?

2.     What was the result?

Rev. 7/20/18                                    4

G.    If your answer is NO, explain why not.


H.    Attach copies of your request for an administrative remedy and any
response you received.  If you cannot do so, explain why not:

Plaintiff is attaching a copy of his Administrative Remedy Generalized Retrieval,
which shows that Plaintiff has exhausted his Remedies for the claims in this action.
Additionally, it the Defendants' defensive burden to allege and present evidence
that Plaintiff has not exhausted his available remedies.
None-the-less, Plaintiff will provide the Court with a proof that he has exhausted
his remedies for all claims named in this action.

## IV.   STATEMENT OF CLAIM

A.   State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated. Do not include legal arguments or citations. If you wish to present legal arguments or citations, file a separate memorandum of law. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

Claim 1: FEDERAL TORT CLAIM ACT; (Authorized Intentional Deprivation of Property) On 11/10/2022 at 10:15AM, Defendant Rhynard searched my cell (214) in E-1 Unit at USP-TUCSON. He located letters my adult daughter and numerous photographs ("Items") sent to me from my adult daughter (J.C.). He confiscated the Items. At Approx. 10:45AM, Defendant Rhynard met with me at the Lt.'s Office and showed Plaintiff the letters and numerous photographs, then questioned Plaintiff about the Items. Plaintiff responded that he received through B.O.P. Policy (i.e., General Correspondence). Defendant Rhynard kept the Items, but did not provide Plaintiff with a Confiscation Form, even though the Items were being held for an investigation. On 12/7/2022 at Approx. 9:15AM, Defendant Rhynard met Plaintiff in a small office in the Special Housing Unit ("SHU"). Rhynard told Plaintiff that the investigation was over, and he was going to author a Incident Report for Code Violation, 196, Illegal Use of Mail against the Plaintiff, for contacting his Adult Daughter, even though he believed the DHO would lower it to a Code 396, Misuse of Mail. Additionally, Rhynard was going to recommend Plaintiff to be housed a "Communications Management Unit" (CMU), at a different institution. Two days later, 12/09/2022, Plaintiff was placed on a bus and taken to the airport for a transfer. BUT Plaintiff was not allowed to board the airplane, due to the previous plan of delaying Plaintiff's transfer by writing a Code 196 and recommending a transfer to a "CMU" institution. Plaintiff was returned to TUCSON. Five days later, on 12/14/2022, Plaintiff returned to the airport and even without Plaintiff still not on the Flight Manifest, Plaintiff was placed on the airplane, and transferred to the Oklahoma Transfer Center in Oklahoma City. Plaintiff left USP TUCSON without receiving a Confiscation Form for the Items, nor physically receiving the Items from Rhynard. (Much less seeing Rhynard after 12/07/2022.) Plaintiff was hopeful that the Items were placed in his Property, but the Items were not in property when he received it. Plaintiff has experienced the employees at USP TUCSON confiscating property from Plaintiff and not returning it or losing it. Establishing a pattern or practice of "losing" or "misplacing" Items that Plaintiff's daughter has sent to him. Because of this pattern and/or practice, of an believed authorized intentional deprivation of Plaintiff's Items, Plaintiff is requesting relief in the sum certain amount of $100,000.00 against the United States of America for the official adverse actions of its employees.

Claim 2: (FTCA)   On 11/10/2022 at 10:15AM, Plaintiff was transferred from E-1 Unit to the LT's Office, then the SHU. Plaintiff's property was not itemized until four (4) days later on 11/14/2022. For unknown reasons to Plaintiff, only five (5) items were itemized on the property sheet.(See property sheet, Front and Back, dated 11/14/22.) The 5 items listed were: 1 legal materials, 1 personal papers (letters from family), 1 photo stack (over 300 photos collected over 9 years from family), 1 Athletic socks, 1 beanie hat. On 12/13/2022, Plaintiff was in the SHU and received a property sheet dated 12/13/2022, and was told to sign it, even though he did witness it being packed into the box(s). These two property sheets do not match. See attached Property sheets, dates 11/14/2022 & 12/13/2022. The stack of photos listed on the 11/14/2022 property sheet were missing from the Plaintiff's property. Plaintiff is also missing all the letters sent to him by his late grandmother, mother, brother, and friend. Plaintiff is seeking a sum certain amount of $100,000.00, against the United States of America for the adverse actions of its employees.

Claim 3: FEDERAL TORT CLAIM ACT; (Failure to Protect)

On 11/10/2022, Plaintiff, Daniel Cobb, was transferred to the SHU for an investigation due to Plaintiff exercising his Constitutional rights with ordinary firmness. (Parental Rights & Intimate Association, 1st & 14th amendments.) Plaintiff was placed into a cell with a Adult In Custody ("AIC") that was unknown to Plaintiff, putting trust in Unknown Defendant, SHU Correctional Officer ("C/O"), who Plaintiff has reported to the Regional Office about, which is why Plaintiff believes that he was transferred from working in the Corridor to working in the SHU. The AIC that Plaintiff was placed in a cell with was of a different race. (Black) Also, AIC reported to Plaintiff that he was not a sex offender and was muslim. Opposite religion of Plaintiff as well. After SHU C/O left the cell door, Plaintiff was told by AIC cellmate that: 1) Plaintiff is on food restriction; 2) Plaintiff will be performing oral sex on AIC and AIC will be raping him afterwards; 3) Plaintiff is not allowed to near or at the cell window or he will be assaulted. After dinner at approx. 4:15PM, AIC made good on his directions, where Plaintiff did not eat dinner, and was sexually assaulted by the AIC. After the rape, AIC was disgusted with feces on his penis and berated Plaintiff. The following day, veteran's day, cell moves were conducted. Given the previous experience Plaintiff endured on May 25, 2017, when Plaintiff stuck his head in the closing cell door, then was removed from the cell he was assigned to and placed in a cell by himself and was able to speak to psychology staff, Plaintiff devised a plan that he would create the previous incident when he was taken to the different cell. (See Psychology Notes, dated 05/25-26/2017.) When Plaintiff repeated the placing head in closing door behavior, the same Unknown SHU C/O reopened the door and placed his hand on Plaintiff's head and shoved him back into the cell with AIC, then called for the door to close again, Plaintiff then repeated the behavior while looking at Unknown SHU C/O, again, SHU C/O grabbed Plaintiff's head and shoved Plaintiff back into the cell with AIC, on the third attempt AIC pinned Plaintiff to the wall with AIC's body and told SHU C/O to "go ahead and shut the door". After the door was shut, both AIC and the SHU C/O shared a laugh that Plaintiff tried to kill himself. But Plaintiff remained in the cell with AIC for the remainder of the night. While Plaintiff was sleeping, Plaintiff was assaulted in his sleep. (AIC HICKS, who was across the hall from Plaintiff heard the Plaintiff's scream.) No assaults happened for the rest of the day. That night Plaintiff was afraid to fall asleep, in fear of being attacked again. The next morning, Plaintiff ate a little of the "brunch" served. AIC did not like that Plaintiff did not eat ALL the food AIC gave him to eat. When Plaintiff placed the tray on the ground near the cell door for collection later, Plaintiff was assaulted again in the back of the head. Plaintiff turned around facing AIC and Plaintiff was struck in the jaw, knocked out, and was told he fell forward and hit his head on the edge of the raised shower floor. Plaintiff had a gash on it and was bleeding and unconscience. When Plaintiff regained conscience, AIC devised a ruse to explain the gash, and shift the blame onto Plaintiff, by stating that Plaintiff tell the SHU C/Os that Plaintiff fell in the shower. Even though Plaintiff's injury would be hard to physically explain how that occurred. The Plaintiff knowing that this is his chance to leave the cell with the abusive AIC. Plaintiff agreed and Plaintiff was finally able to be near the door to report his injury and later his sexual assault by AIC. Which Plaintiff did make the reports to Defendant Edgardo Cosme, RN and in front of Defendant Albright, SHU C/O. (See Clinical Encounter, dated 11/13/2022.) (See also Standard Form 95 TORT Claim.) Due to the negligence by the Unknown SHU C/O when he refused to remove Plaintiff from the cell after the door closed on Plaintiff's head Plaintiff was physically attacked by AIC and the assaults were allowed to escalate, causing permanent injury. (A scar on the right side of Plaintiff's head.) Plaintiff requests relief of a sum certain amount of $2,000,000.00 for "failure to protect" Plaintiff from further permanent injury by failing to remove Plaintiff from the cell with AIC before the physical attacks occurred and escalated. Plaintiff sent the FTCA Form to the Western Regional Office on 10/16/2023. (See Copy of USPS Tracking #7021 2720 0001 8199 5044.)

6-A

Claim 4: FEDERAL TORT CLAIM ACT; (Failure to Report Sexual Assault, Provide Medications)
On 11/13/2022, Plaintiff was punched in the jaw by his cellmate that resulted in Plaintiff being "knocked out" (i.e., unconscience.) Plaintiff was told by his attacker that Plaintiff fell forward and hit the edge of of the shower's raised floor, causing an open wound to the right side of Plaintiff's head. After Plaintiff regained conscience, the attacker allowed Plaintiff to be near the door and alert SHU C/Os of the wound. SHU C/O Defendant Albright came to the cell door passing out toilet paper. Plaintiff alerted Albright. Albright refused to alert the medical staff, stating that the medical staff "is busy". Plaintiff demanded medical attention to his open and bleeding wound. Albright still refused, so Plaintiff "popped" a fire sprinkler to alert other SHU staff of the wound. And to be removed from the attacker as well. While the trap in the door was open, Plaintiff then "took" the trap, by sticking his arm in the door, blocking it from being closed. Which would result in a Lieutenant arriving. OR Albright would retrieve medical staff for Plaintiff. Plaintiff was then removed from the cell with the attacker and brought to a medical bay inside the SHU. Where Plaintiff reported the sexual assault and the physical assault by his cellmate. After Plaintiff's wound was attended to, Plaintiff was placed in a "hard cell" with no water access for washing. After approx. 1 hour, Plaintiff was removed from the SHU and taken to the medical department, and placed in a observation room, where the shower and toilet rooms were locked. Again, preventing water access, per policy for sexual reporting. Plaintiff was given a urine collector for urination. The next morning, 11/14/2022, Witness NP-C R. Archuleta came to Plaintiff's room to provide his morning medications. Plaintiff inquired about the upcoming hospital visit he was told about he would receiving, due to physical and sexual assaults. Archuleta was unaware of any physical or sexual report by Plaintiff. Archuleta went to check on this and Cobb did not see Archuleta again. Later that day, Plaintiff was removed from medical and transported to the local hospital (Tucson Medical Center, "TMC"). While at TMC, Plaintiff received, a MRI for his head and jaw, chest x-rays, and a "sexual survivor kit" was performed (i.e., photographs, swabs, and an interview that was transcribed). Plaintiff was returned to the SHU, and placed back in a hard cell, with the water now turned on. But had no access to a shower. Plaintiff was not given his S.T.D. medications either. Plaintiff was ultimately transferred out of USP TUCSON, on 12/14/2022. Plaintiff arrived at USP-MARION on 12/27/2022, and subsequently Plaintiff requested his medical records for the time in the USP Tucson's SHU. Upon receiving the records, Plaintiff then realized that neither Defendants, SHU C/O Albright or RN Edgardo Cosme had reported the sexual assault immediately after Plaintiff reported to them about the sexual assault, in the medical bay in the USP TUCSON SHU. Plaintiff never received his STD meds prescribed. Due to the negligence by the federal officers by failing to report sexual abuse after it was reported to them by the Plaintiff. Plaintiff is requesting a sum certain amount of $2,000,000.00 against the Defendant, United States of America. (See Medical Records, dated 11/13/2022,&TORT Claim)

Claim 5: FEDERAL TORT CLAIM ACT; (Damage to United States Mail by Federal Employees)
On 06/07/2022, Plaintiff received photocopies of the photographs that Plaintiff's mother sent him. The photocopies of each photo were 2x2 inches, and in color. Due to the size of the 2x2 photo and the original size of 4x6 inches, the photographs were cropped and shrunk down from the original size. Causing a type of "censor" or "damage" to the Photographs, since Plaintiff did not receive the photographs in their original state. Additionally, Plaintiff was told (by memorandum on bulletin board) that Plaintiff would have to pay for the originals to be returned to his mom, which is against B.O.P. Policy,(Policy Statement 5800.10, dated, 11/3/1995.) Plaintiff had to pay $1.74 in postage for the photographs to be returned to his mother. Plaintiff is requesting $1.00 per damaged photograph and the amount of the return postage of $1.74, for a sum certain amount of: $21.74 against the United States of America, pursuant to the Mail Management Manual, P.S. 5800.10.

Claim 6: FEDERAL TORT CLAIM ACT; (Damage to U.S. Mail by Federal Employees)
On June 15, 2022, Plaintiff received a letter from his mother which was opened and photocopied and shrunk down. When Plaintiff read the letter, he discovered that part of it was censored. (See 1st Letter, P.2.) Plaintiff inquired to the Mail Room staff about it. Plaintiff was told that they will recopy the letter. Plaintiff received the letter and it still had the same line censored. (Concerning his adult daughter). Plaintiff is requesting a sum certain amount of $500.00 for the damage/ censorship of his letter from his mother, against the United States of America, for the negligence of the mail room staff of censoring his mail.

Claim 7: FEDERAL TORT CLAIM ACT; (Loss of Property)
On 11/10/2022, Plaintiff was transferred to the SHU. Plaintiff's property (i.e., commissary purchases) was left in his cell. Plaintiff's property was not itemized until 11/14/2022, for unknown reasons. (See Property Sheet, dated 11/14/2022, filled out by Defendant D. Verdugo.) The Property Sheet listed only five (5) items: 1 Legal Materials (Law print outs), 1 Personal Papers (Letters from family members, living and deceased) from last nine (9) years, 1 Photo "stack" (approx. 300 photographs), 1 Athletic Socks, and 1 "Beannie" hat. On 12/13/2022, Plaintiff was handed a different Property Sheet, and told to sign it. Plaintiff was told by that property officer that this is your listed property and it will ship after Plaintiff leaves USP TUCSON. Plaintiff arrived at USP Marion on 12/27/2022. Plaintiff received his property on 02/23/2023. In his property he found the 11/14/2022 Property Sheet. Both Property Sheets, 11/14/2022 & 2/23/2023 do not match. Plaintiff mailed a TORT CLAIM to the Western Regional Office, and has not received a response concerning the TORT Claim. Plaintiff is requesting a sum certain amount of $441.80 from the United States of America for the missing property that was not listed or received, due to the negligence of the Federal Officer(s), Defendants, D. Verdugo, and property officer, C. Cadena, being unprofessional in their duties owed to Plaintiff concerning his property. (See TORT CLAIM.)

Claim 8: FIRST AMENDMENT (Access to Courts)
On 09/05/2023, the Supervisor of Education for Federal Correctional Institution - MARION ("Marion"), T. Robertson, generated a Memorandum for Inmate Population ("Memo"). The Memo.'s subject was "Education - Sunday Hours", due to the closure of Education every Saturday. In the Memo. she informed the inmate population (Adult In Custody, (AIC)) "that the Education hours on Sunday have changed. Starting [09/10/2023], the leisure library will be open during the following hours: 6:15am-9:30am[,] 10:30am-3:15pm[.] In addition, the law library will be open from 12:00pm-3:15pm." The leisure libary is where AICs have access to typewriters, the only AIC Copier, Law Reference books, printer to print case law, AIC accessto a scale to weigh legal envelopes for mailing. The "law library" is located in a separate room and contains 8-10 Electronic Law Library (ELL) computers and a thick Law Dictionary. Also, a ELL is located in each unit. The B.O.P. Policy Statement 1542.06, Inmate Library Services, states in Section 5.,[Procedures, sub-section a., that: "[t]he Warden shall assign a staff member (ordinarily the Supervisor of Education) responsibility for the inmate library.] Staff responsible for the inmate library are to ensure that the library offers: [] # daily library hours in proportion to inmate needs, with evening and weekend hours. The library shall be open for a minimum of three hours daily and eight hours over weekends." The above B.O.P. Policy, 1542.06 combined with the 09/05/2023 Memo. it is clear evidence that T. Robertson was attempting to follow B.O.P. Policy 1542.06, 5., a., by ensuring that the library offers eight (8) hours over the weekends, beit that Education is closed on Saturday. In November 2023, Plaintiff worked at Federal Prison Industries (UNICOR), a First Step Act Program, additionally, Plaintiff was given a due date by the Ninth Circuit Court of Appeals to file a pleading. Be it that,

6-C

Plaintiff worked Monday - Friday, 6:30am to 1:40pm, his time to access the leisure library and the items inside it were limited. Causing the Supervisor of Education's Memo. extremely valuable to Plaintiff, having interrupted amounts of time to prepare his pleading for the Ninth Circuit Court of Appeals. Unfortunately, the Education moves at 6:15am and 10:30am were not being conducted by the employees at Marion. When Plaintiff inquired about and requested the 6:15am and 10:30am (after count) moves be conducted, he was met with indifference and flat refusal. Roughly being told to "file on it", by the operations Lt., and given poor excuses by Defendants C/Os Austin and Hearn. (Operations Lt.'s name is Huckleberry.) (See attached Request to Staff e-mails, Memo., and B.O.P. Policy 1542.06.) Plaintiff is requesting injunctive relief in the form of Declaratory Order for the 6:15am and 10:30am (after count is cleared) moves to the Education Department be conducted.

Claim 9: FIRST AMENDMENT RETALIATION;

Due to the temporal proximity of filing the administrative remedies for Claim 8, and the termination of Plaintiff's enrollment at UNICOR. Plaintiff firmly believes that he had adverse actions taken toward him (being terminated from UNICOR and moved out of B Unit which is located across the hall from the Education Department) due to his filing the remedies for the above Claim 8. The circumstantial evidence for Plaintiff's belief is that: (1) Plaintiff openly mentioned his job/program assignment at UNICOR in the remedy filings and how the First Step Act program's hours was hindering his ability to have access to the Education Department during the week. Leaving Sunday's hours extremely valuable to Plaintiff; (2) Plaintiff's termination from UNICOR came about due to a search conducted of his locker at work (not in the unit), and staff found a retaliation remedy Plaintiff filed, including items that Plaintiff worked with and that other AICs had located at their work station. Yet, Plaintiff was accused of "the appearance of stealing", when nothing was found on Plaintiff at any time while leaving the UNICOR work area, and a search into Plaintiff's cell and locker revealed nothing stolen from UNICOR. No Incident Report was written concerning this adverse action. Plaintiff was told that he could return to UNICOR in six (6) months. Leaving only the move out of a "preferred housing unit" and a wait of 6 months before returning to UNICOR with all "longevity" lost, causing a pay reduction from $0.69 / hour to $0.24 / hour, when/if Plaintiff returns to UNICOR. Plaintiff is requesting Injunctive Relief in the form of a Declaratory Order to direct Defendant R. Humphries to restore Plaintiff's longevity. (See Electronic Request to Staff E-Mails.)

Claim 10: FIFTH AMENDMENT: DUE PROCESS VIOLATION;

On 10/10/2019, Plaintiff, Daniel Cobb, had a Disciplinary Hearing, with Discipline Hearing Officer ("DHO") C. Cole. At the hearing Plaintiff tried to submit documentary evidence, DHO C. Cole refused to review or add Plaintiff's documentary evidence into the DHO Packet for the Regional Director to review later. Plaintiff was found guilty of Code 197, Illegal Use of Telephone, concerning a telephone call Plaintiff had with his: (1) Mother, (2) Step-Father, (3) Plaintiff, Lucila Urbaneja (Wife), and (4) Plaintiff, J.C. (daughter) on 08/25/2019. Plaintiff, Daniel Cobb, appealed. On 01/15/2020, the Regional Director ordered a rehearing for the Code 197 to be reheard within 21 days in a Memorandum to DHO C. Cole. Also, in the Memo. to the DHO, the Regional Director stated false information concerning the Plaintiff's Victim Notification System. No rehearing was held in 21 days. Plaintiff appealed the DHO's denial of the Rehearing on 02/20/2020. Meanwhile, DHO C. Cole was removed and replaced with DHO Antonietta Estrada. On 03/10/2020, the rehearing was held, where Plaintiff tried, again, to present his documentary evidence at the hearing, but Defendant Antonietta

- 6-D -

Estrada refused to review or accept the documentary evidence into the DHO Packet, Plaintiff's charge of Code 197 was lowered to: Codes 397, and added Code 306. (397=Misuse of telephone, 306=Failure to Program). On 04/26/2020, a Sunday, the Regional Director decided to expunge both Code violations from the Plaintiff's record. After Plaintiff received this response concerning the expungement of the code violations, he requested a copy of his Disciplinary Hisory. Which reflected the Code 306 was expunged, but the Code 397 remained. Plaintiff inquired about this on 06/01/2020, with Defendant DHO A. Estrada, through E-mail. Her response was that the Incident Report ("I/R") was being reviewed at the Regional Office, and that the 306 was expunged, but the 397 remained. Plaintiff waited for any response from the Regional Office or Defendant DHO Estrada. After 10 days, Defendant DHO Estrada replied stating that Plaintiff's concerns were noted and sent to the Western Regional Office, and that Plaintiff will likely receive a a response from the Western Regional Office. ("WXR") Meanwhile, Plaintiff filed a 28 U.S.C. § 2241, concerning the 41 days disallowed Good Conduct Time that was not returned to Plaintiff after the lowering of the 197 to 397. (See Cobb v. Howard, 4:20-cv-515-RCC-LCK.) This case was in the District of Arizona, Tucson. Defendant Antonietta Estrada filed her Declaration in this case stating, under penalty of perjury, wrong information. Specifically, adding two (2) additional charges that Plaintiff was not found gulity of; That Plaintiff's first Appeal was successful and the second Appeal was partially successful; and to reinforce her statement, she states, that Plaintiff's daughter "IS a listed victim". On 06/04/2022, after no response for two (2) years, Plaintiff contacted Defendant Estrada concerning the Code 397 still on his record. Defendant Estrada replied on 06/10/2022, that she received the Western Regional Office's decision as-a whole, yet she never provided Plaintiff with anything in writing so that he could appeal the "new" decision from the Western Regional Office.
On or about 09/19/2022, the Western Regional Office traveled to USP TUCSON, for a tour/visit. At lunch time, Plaintiff brought the expungement response with him to the Chow Hall. He then approached, Ms. Winters, and showed her the expungement response and the disciplinary history reflecting that only the 306 code was expunged. During Plaintiff explaining this, his former Unit Manager, Diaz, approached them and offered that the Plaintiff's Case Manager could expunge the 397 violation. On 09/27/2022, Plaintiff sent a E-mail request to his case manager, J. Tate, requesting the expungement of Code 397. His response stated to contact the DHO about expunging the Code 397. Plaintiff, knew how the Defendant DHO Estrada felt on this subject, but decided to report the Diaz response for training purposes later, as Diaz was still a "new" Unit Manager. Plaintiff was met with a highly emotional, lengthy response from Defendant Estrada on 09/28/2022. The following day, 09/29/2022, Plaintiff was called to the Unit C/Os' Office and a Lt. gave him a "stalking memorandum" to sign. And was told by the Lt. that "I don't know what you did, but don't do it again, or I will put you in the SHU." Plaintiff rationally believed that this Stalking Memorandum was requested by Defendant Antonietta Estrada. On 12/14/2022, Plaintiff was transferred out of USP TUCSON. On 02/23/2023, Plaintiff requested his Disciplinary History sheet, after seeing that the 397 code violation was still present, he filed a BP-8, and a BP-9 concerning the Code violation, and requested it be expunged. On 03/23/2023, the Administrative Remedy Clerk stated that "I have processed your remedy about the 397 still being on your disciplinary history. I have ran this by Mr. Wallace, DHO, and he is going to reach out to that region [Western Region] and try to get this taken care of for you. Since you provided your BP-10 [response] showing it was granted, we can most likely informally resolve this if you choose to do so."

On 04/26/2023, Ms. Wallace responded to Plaintiff's earlier remedy inquiry. She stated, in part, Remedy "#1155421 Due 04/09/2023, -----Mr. Wallace had [Plaintiff's] charges cleared from [Plaintiff's] records."
     Beit, that Defendant DHO Antonietta Estrada had in her possession the Western Regional Director's Response expunging both Codes 397 and 306, yet she consistently refused to expunge the 397 code, and going so far as to perjure herself in Federal Court concerning the expungement, and even though Plaintiff produced this Response in Federal Court, the Court decided to place more weight with Defendant Antonietta Estrada's Declaration than Plaintiff's signed and dated Western Regional Director's Response. Causing his § 2241 relief of expunging the Code 397 to be denied. For the above reasons, Plaintiff's requested relief is two-fold, First, Plaintiff requests that the Code 397 be expunged from his Central File Record, all documents concerning his daughter in his Privacy Folder located in his central file pertaining to the Code 397 violation. Second, Punitive Damages of $300,000.00 against Defendant, Antonietta Estrada for her reckless disregard for Plaintiff's Constitutional rights, and/or that the above actions were conducted with evil or malicious intent. Lastly, the removal of the unsubstantiated "Stalking Memorandum" that is located in Plaintiff's "Privacy Folder", part of his central file. As Plaintiff was not "stalking" or "harassing" Defendant Estrada, nor anyone else. Plaintiff's only intent was to follow the Western Regional Director's Response and have the 397 code violation expunged from his record. (See attached Disciplinary History printouts, Regional Response; see also, Case No. 4:21-cv-515-RCC-LCK, Doc.16-1, U.S. Dist. C. AZ.)

Claim 11: 28 U.S.C. § 1331; ORDER TO BOP DIRECTOR TO DEFINE "VICTIM" IN POLICY: On 09/26/2013, Plaintiff, Daniel Cobb's sentencing hearing was conducted. During the hearing, the instant offenses Victims' family requested a "no-contact" order as part of Cobb's supervised release. The Court granted the request, by stating, "The judgment should reflect that the defendant [Daniel Cobb] is not to have -- upon release and on supervised release is not to have any contact with the victims or the victims' family." (See Government's Memo. for C.O.A. #18-2205 at 10.) (EXHIBIT 79-A) Due to the transcript making clear that the "victims" in the order were sisters, not related to the Cobb, nor anyone in his family, and also due to the information mentioned in Cobb's Presentence Report ("PSR"), the Psychology Defendants have compared Bureau of Prisons Policy Statement ("PS") 5324.10, Sex Offender Management Program's use of the term "victims" & to wrongly apply, (1) Cobb's daughter as one of his "victims" instead of identifying her as an "alleged victims". Absent any charge or conviction involving his, now adult daughter; and (2) Cobb is violating his judgment and commitment order by contacting her; even going as far to sever Cobb's (3) contact completely with his wife, Lucila Urbaneja. This has occurred at USP Tucson, in Arizona, and has continued in F.C.I. MARION. Showing a pattern and practice of unconstitutionally applying B.O.P. PS 5324.10 to any and all contact with Cobb's immediate family. (Both whom live abroad in the Philippines.) Specifically, on 1/20/2023, Jennifer Weber, authored a Correctional Management Plan ("CMP") and placed it on Cobb, due to her finding out that Cobb was having contact with his adult daughter, (20 yrs old) by telephone. Despite that there was not conversations concerning sexual subjects. On 03/02/2023, Lindsey Owings met with Cobb about the CMP. She agreed with the information contained in the CMP and disagreed with Cobb that his fundamental Constitutional rights were being violated, applying B.O.P. Policy 5324.10's use of the term "victim(s)" to Cobb's instant case. Thereby, she was given notice that she and her subordinates were violating Cobb's parental rights and severing his parent-child relationship without Due Process, before or after, the decision.

Due to the PSR does not name Cobb's daughter a "victim", but describes allegations that are considered "Offense Behavior Not Part of Relevant Conduct", not charged conduct, nor was Cobb found guilty in a court of law for such behavior.(See sealed PSR, P.09, Paragraph 45.) To this day Cobb is prohibited from contacting, in ALL forms of communication, with his wife and adult daughter. Or he will receive an Incident Report, taken to the SHU, placed on another CMP, have the potential to lose most of his property, be placed in the SHU with a violent cellmate, found guilty, and receive sanctions, up to loss of Good Time Credits, before having the Incident Report expunged by the Regional Office. ALL due to the beliefs of the named Defendants (D. Sproul, R. Blair, Huggins, M. Dawn, L. Owings, J. Weber, R. McCaffrey, Gauthier, J. Gregory) that they are following B.O.P. Policies, 5324.10, 5110.17, Notification Request Upon Release of Sex Offenders, Violent Offenders, & Drug Traffickers since there is not a definition of the term "victim" that defines victim to mean a person directly involved with a offense that a AIC has been found guilty of committing and was sentenced for that offense, be it, past or instant offenses. As the court defines the term "victim(s)" and separates that term and the rights that accompany it, with the term "alleged victim(s)".

For the above reasons, Plaintiffs request that the Court give an ORDER directing C. Peters to change, at least, PS 5324.10 to include the definition of "victim(s)", and any other B.O.P. Policies that include the term "victim(s)", at most.

Claim 12: FIRST & FOURTEENTH AMENDMENT VIOLATIONS; (WIFE, LUCILA URBANEJA)

On October 7th, 2019, (three days before Plaintiff's DHO Hearing) Plaintiff's staff representive, Defendant Amanda Stangl, authored a Memorandum to the Complex Warden recommending that Plaintiff be prohibited from communicating with his wife, Lucila Urbaneja, by any means, including via mail (electronic or postal), telephone, and visits. Leaving NO available alternate means of contacting his wife. Defendant Amanda Stangl used mal-information as reasons for this request. Specifically, that: (A) Lucila "is the mother of one of COBB's minor victims"; (B) "This request is being made in order to protect this victim"; (C) "and abide by various court orders, ordering no contact." Which is contrary to the events that took place at Cobb's sentencing hearing; (D) Even Cobb contacting his wife "to discuss the status of victim." Which is an exaggerated response and mis-labeling Cobb's daughter (J.C.) as a victim, combining that with the stigma that is attached to the term "victim", which leads the reader (Complex Warden) that Cobb is contacting one of Cobb's instant offense victims, who are sisters and not related to his wife. On 01/10/2023, Plaintiff requested his adult daughter to be added to his visitor list, it was approved that day by Counselor Defendant, S. Hicks. Seeing that Cobb's mother, step-father were missing on the Visitor List, on 01/24/2023, Cobb requested that his mother, step-father, and wife, Lucila Urbaneja be added to his Visitor List. Everyone was approved that day, but the Visitor List reflected that Cobb's adult daughter had been "EDT" (un-approved). On 02/24/20223, Cobb requested a copy of his Visitor List, which now reflected that Cobb's wife was now un-approved. Meanwhile, on 01/10/2023, Cobb's Unit Team was served a Declaration from a S.I.S. Lieutenant in Tucson, ("Declar.") that was sealed by that Tucson Court. In the Declar., was mis- and dis- and mal-information concerning Cobb's Lawsuit, in Tucson. On 01/14/2023, Defendant R. Blair called Cobb to the Lt.'s Office and directed him not to contact his wife and adult daughter anymore. Another S.I.S. agent, Defendant Huggins, added that "if [he] found out that Cobb contacted his adult daughter [he] would place Cobb under the SHU and no one would find [Cobb] till years later, after an anthropological dig." Cobb perceived this to be a death threat. On 01/15/2023, the next day, Cobb spoke to Defendant Michelle Dawn about the Lt. Office visit, and reported what occurred in the Lt.'s Office. She replied "I know, I am the one who told them to talk to you." Cobb then walked away.

On 01/20/2023, Defendant, Jennifer Weber, PhD, met with Cobb and notified him that that he is now placed on a CMP, due to Cobb communicating with his adult daughter (J.C.) over the telephone. Later that day, Cobb saw his wife's and adult daughter's new telephone numbers were blocked, also their mailing addresses were blocked as well. On 01/24/2023, Cobb requested his wife, along with his parents be added to his Visit List. They all were approved. BUT, Cobb noticed that his J.C.'s approval was removed from the list and showed a "EDT" were it showed "approved" before. After one month, Cobb requested another copy of his Visitor List. When he received it. It showed that sometime between 01/24/2023 and 2/24/2023 his wife and adult daughter were both removed from his Visitor List. This adverse action towards Cobb is evidence that Cobb has not, nor will have, any available alternative means of communication with his wife and adult daughter since January 2023 to this present day, while he is being housed at FCI MARION. Which appears that all the employees (Defendants) have adopted the adverse actions that were originally started at USP TUCSON. Cobb requested that these restrictions be removed and cited the Constitutional violation, the request(s) were denied, including all the appeals filed with the upper agencies. (Regional Director, Central Office). All responses use the language of Defendant, Amanda Stangl's Memo. and incorrectly states that Cobb is violating his Judgment and Commitment order if or when he communicates with his wife and adult daughter. All the responses also include the labeling of Cobb's adult daughter as a "victim" and recites the term "risk-relevant" when dealing with anything relating to communication between Cobb and J.C. For the above adverse actions of the above Defendants, Cobb is requesting relief of punitive damages in the amount of $300,000.00 per each liable Defendant listed above. These punitive damages is intended to deter the Defendants from repeating these actions against Cobb and also to deter future Defendants from repeating these adverse actions toward Cobb and his immediate family. As what occurred here and in USP TUCSON. (Judicial Notice of Case 4:21-00241-TUC-JAS.) (See sealed copy of Cobb's "VICTIM NOTIFICATION SYSTEM" list, that does not reflect J.C. listed as a 'victim'.

Claim 13: FIRST & FOURTEENTH AMENDMENT VIOLATIONS; (Severing Parent-Child Relationship) On 12/16/2022, Cobb's telephone became unrestricted. Cobb contacted his adult daughter, J.C. that same day. From 12/16/2022 to 01/14/2023, Cobb & J.C. had wanted communication with each other. On 01/10/2023, F.C.I. MARION's employees were served with a Sealed Declaration from S.I.S. Lt. Ulrich, that indirectly informed F.C.I. Employees (including Cobb's Unit Team) that Cobb was having communication with his daughter and his belief that Cobb was violating his Judgment and Commitment order, by having any contact with his daughter. As a result of this serving of the sealed Declaration, USP TUCSON employees were able to pass their unfounded beliefs to Cobb's current institution, and on 01/14/2023, Cobb was called to the Lt.'s Office and met with S.I.S. Lt. R. Blair, who directed him not to have any contact with his adult daughter, as of 3:34PM. Cobb then had his life threatened by S.I.S. agent Huggins if Huggins was to find out that Cobb had contacted his adult daughter. R. Blair and Unknown Huggins both received their information from (1) Defendant Michelle Dawn, and (2) the Sealed Declaration of Jeremy Ulrich. On 1/20/2023, Cobb met with Defendant J. Weber, who placed him on a CMP for contacting his adult Cobb filed remedies to remove the vague, false CMP. All Remedies levels were denied. On 03/02/2023, Cobb met with Defendant, Chief Psychologist, Lindsey Owings concerning the CMP placement and its removal and violation of Cobb's Constitutional rights. L. Owings also delivered Cobb the requested Psychology Records that Cobb filed a remedy request to the warden about. L. Owings approved the placement of the CMP, sharing the beliefs of Defendant J. Weber. Relying on the mis-labeling of J.C. in Cobb's psychology record as a "victim" and construing this mislabeling to include J.C. as the subject of the no-contact order, as part of Cobb's supervised release. After that meeting, Cobb spoke to Defendant Michelle Dawn and asked if she believed that Cobb should not contact his adult daughter and wife. She stated, "YES". The Remedies Cobb filed concerning the unblocking of Cobb's wife's and Adult daughter's were signed by Defendant, Associate Warden, R. McCaffrey. In which he includes the same false beliefs of the previous Defendants (Blair, Huggins, Dawn, Weber, Owings) and even quoted, in part, Defendant Amanda Stangl's, 10/07/2019 Memorandum.

- 6-H -

Since, June 2017, Cobb has endured lie after lie, that the Psychology Dept. has used as "evidence" to support their false beliefs concerning Cobb's contact with his wife, Lucila and (now adult) daughter, J.C.. Using this false evidence in adverse actions against Cobb and his family. (Mother, Step-Father, Wife, Daughter.) Even going so far at USP TUCSON to file false statements with the FBI. This is the only difference between here, F.C.I. - MARION, and USP TUCSON. BUT then, F.C.I. MARION's employees went a bit further, by threatening Cobb's life, outright. (Done by Defendant Huggins.)

As of this day, Cobb has not been placed in the Special Housing Unit ("SHU") and neither desires to experience the F.C.I. MARION's SHU. For this reason, and due to the pattern of retaliation committed by employees at F.C.I. MARION, Cobb requests this court to be ready to halt any adverse actions that Cobb reports to this Court during this litigation. (Minus a transfer to Marianna, FL or Butner, NC.) Plaintiff, Daniel Cobb, requests (1) injunctive relief in the form of a Declaratory Order, stating that these above named Defendants, halt and reverse any adverse action against Cobb that concerns prohibiting Cobb from contacting anyone in his family (immediate or extended); (2) Punitive Damages in the amount of $300,000.00 per liable Defendant of violating Cobb's familial relations (intimate association) and parent-child relationship, by providing no due process before prohibiting Cobb from contacting his adult daughter; (3) These punitive damages are intended to deter these liable Defendants from continuing their Constitutional violations of Cobb's rights and to deter any employees of the BOP from committing the same adverse actions toward Cobb and any member of his family; (4) Removal of any & all documents connected to the Constitution violations of Cobb's rights, concerning Cobb contacting his daughter from Cobb's central file, SENTRY, and DARTS program.

Claim 14: THIRD PARTY STANDING ON BEHALF OF LUCILA URBANEJA AND J.C. ;

Since June 2002 to this day, Cobb's Wife, Lucila Urbaneja has lived in a third world country, the Philippines. She has consistently relied on Cobb for financial support for herself and their daughter, J.C.. Cobb has provided financial help whenever he was called upon to do so, and had the means to do so. Cobb's and his Wife's relationship is "complicated" but is in no way "estranged", except for the physical distance between them. Cobb and Lucila Urbaneja have maintained as close as a relationship as possible given the circumstances before his arrest, and even after his incarceration, until being prohibited from having contact with her by the Defendants Daniel Sproul, R. McCaffrey, Michelle Dawn, R. Blair, Huggins, Jennifer Weber, Gregory, S. Hicks, and Amanda Stangl, Antonietta Estrada at USP TUCSON, in Arizona, through Documents created by them or direct orders given to Cobb not to have any contact with his Wife and Daughter, including blocking their contact information he has on his TRULINCS account.

For the above reasons, Cobb requests on the behalf of Lucila Urbaneja and J.C. that: (1) If the Court finds that Cobb does not have standing to represent his wife and daughter, that the Court appoint counsel for them to represented in this action; (2) Punitive Damages in the sum certain amount of $300,000.00 be awarded to Lucila Urbaneja and J.C. for the adverse actions that violated their Constitutional rights by the listed above Defendants found liable by this Court; (3) Injunctive Relief in the form of a Declaratory ORDER to Colette S. Peters for her to direct her employees not to prevent Cobb from communicating with Lucila Urbaneja and J.C.. Association Standing requires factual allegations showing that (a) at least one of the association's (family) members would otherwise have standing on their own right; (b) the interests sought to be protected by the lawsuit are germane to the association's purpose; and (c) neither the claims asserted nor the relief sought requires the participation of individual members in the lawsuit. Cobb can and could be allowed to invoke third-party standing because: (1) he has suffered an injury-in-fact; (2) there is evidence that he has close relationship to the his Wife and Daughter; and (3) there is evidence that there is a "hinderance

- 6-I -

to the third part[ies'] ability to protect [their] own interest[s]." Marin-Garia v. Holder, 647 F.3d 666, 670 (7th Cir. 2011). And at least, Lucila Urbaneja and J.C. should be allowed to remain as Plaintiffs in this action, as the adverse actions created and executed by the above named Defendants directly effected them as well as Cobb for the past 22 months, and also going back to 2017 in Tucson, AZ at USP TUCSON. As third-party is only available where a Plaintiff shows: (1) a close relationship and alignment of interests with a non-party and (2) a hinderance to the non-party's ability to assert their own rights. Singleton v. Wulff, 428 U.S. 106, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976). Also the Seventh Circuit Court of Appeals has noted that the "court has allowed standing to litigate rights of the third parties when enforcement of the challenged restriction against the litigant would result indirectly in the violation of the third party's rights". Kowalski v. Tesmer, 543 U.S. 125, 130 S. Ct. 564, 160 L. Ed. 2d 519 (2004). Lastly, the Supreme Court of the United States has decided "[t]o establish third party standing, we require that a litigant, in addition to alleging injury-in-fact, allege a sufficiently close relationship with the third party s that the court is assured that the litigant will be an effective proponent of the cause, Powers v. Ohio, 499 U.S. 400, 411, 111 S. Ct. 1364, 113 L. Ed. 411 (1991), and we consider whether there is some hinderance to the third party's ability to protect his[/her] own interest." (Brackets added.)

It is abundantly clear that absent the notice that these Defendants have given to Lucila Urbaneja and J.C. of    the blocking of the contact information of any kind, these above named Defendants have violated Lucila Urbaneja's and J.C.'s Due Process rights as well as    their fundamental Constitutional rights. Therefore, Cobb's relief is intertwined with Lucila's and J.C.'s relief, and Cobb's immediate family is clearly a "close relationship" and Lucila's and J.C.'s current location outside the United States of America qualifies as a severe "hinderence" for them to   have   their own ablilty to assert their own interests.

Claim 15: BANE ACT VIOLATION; FOURTH AMENDMENT

On 01/10/2023, Defendant Michelle Dawn was notified about a SEALED S.I.S. Lt.'s Declaration by receiving a SEALED Declaration of TUCSON S.I.S. Lt. Jeremy Ulrich, filed in Tucson, AZ. Four (4) days later, Cobb was called to the Lt.'s Office at FCI MARION. Where he met with and spoke to Defendant S.I.S. Lt. R. Blair. Blair directed Cobb not to contact his adult daughter anymore, as of 3:34PM today. Defendant S.I.S. Huggins then blurted out that IF Huggins found out Cobb contacted his adult daughter, that Huggins would put Cobb UNDER the SHU and no one would find Cobb's body until after a anthropological dig, years later. This threat of Cobb's life was made in front of R. Blair. R. Blair did not admonish or correct Huggins's direct threat towards Cobb. Cobb then stated that he would follow the order NOT to contact his adult again, after he called her that morning on 01/14/2023. Cobb reported this threat of Cobb's life to the Central Office in Washington, D.C., through a "Character Survey" that was available on TRULINCS. Cobb also reported the threat of Cobb's life and discussed his fear for his life with Defendant Jennifer Weber. After which she escorted Cobb to the Lt.'s Office to discuss the threat with Lt. Johns. Defendant Michelle Dawn admitted to Cobb on 01/15/2023, that she directed S.I.S. to speak with Cobb about not contacting his adult daughter anymore, after Cobb discussed the events that happened on 01/14/2023.

Cobb has not contacted his adult daughter since 01/14/2023, due to fearing for his life, and the threats of being placed in the SHU, receiving Incident Reports, losing his property that he has purchased, and sent to him by his parents, and sanctions due to being found guilty of the incident reports written against him. On 01/20/2023, Lucila Urbaneja's and J.C.'s contact information was blocked on Cobb's TRULINCS account. All Plaintiffs were not notified in writing about these blocks and the reasons behind the blocks. From 01/10/2023 to 02/24/2023, Lucila Urbaneja and J.C. were removed from Cobb's visiting list as well.

- 6-J -

Additionally, on 03/02/2023, Defendant  Lindsey Owings, met with Daniel Cobb ("Cobb") to discuss the placed CMP and to receive his requested records. During the meeting, Lindsay Owings told Cobb that she agreed with the CMP and that unless a Court says that he can communicate with his adult daughter and wife, he will continue to be prohibited from speaking to them, and if he does contact either one of them, he will given an incident report and sent to the SHU, along with a another CMP being placed on Cobb. This threat is silencing his Constitutional right to have Familial Relations with his immediate family.L. Owings omitted these statements from the record, but included that L. Owings and Cobb "met for an hour", falsely reporting that they "discuss[ed]" the records "for an hour". (See EXHIBIT 122)

On 01/20/2023 and 01/31/2023, Defendant Jennifer Weber, met with Cobb and directed him not to contact his wife and adult daughter again or he will be will receive a incident report and sent to the SHU.(See EXHIBIT 84, EXHIBIT #121)

On 01/26/2024, Defendant Joshua Gregory met with Cobb and told him not to contact his adult daughter again or he will receive another CMP, and possible incident report as well, which would lead Cobb to the SHU. (See EXHIBIT 124)

On 02/26/2024, Defendant C. Gauthier met with Cobb, along with SOMP Treatment Specialist, SOMP-Psychologist, SOMP-C[oordinator], where they all agreed and told Cobb not to contact his adult daughter and his wife again, or he would be placed on another CMP and be faced with a incident report and possible placement in the SHU. The Record also falsely stated that his adult daughter is one of his "victims of his sexual offenses." Which does not reflect the information in the Victim Notification System. (EXHIBIT #125) (VNS, FILED UNDER SEAL, EXHIBIT #67.)

Therefore, all the above Defendants Michelle Dawn, R. Blair, Huggins, Lindsay Owings, Jennifer Weber, C. Gauthier, and Joshua Gregory threatened Cobb with a Incident Report and a transfer to the SHU, and a placement of another CMP, if Cobb contacted Lucila Urbaneja and J.C. again. Silencing his Constitutional right to have and maintain Familial Relations (association), including a Parent-Child Relationship with his adult daughter. Especially Huggins going to far with the threats, to include threatening Cobb's life if Cobb contacted his daughter.

Claim 16:Defendant " LS ", Acting Western Regional Director;

The Acting Western Regional Director's name is unknown to Plaintiff Daniel Cobb. The only information that Daniel Cobb (Cobb) knows about the identity of " LS ", is that her initials are L.S. Cobb also knows that any appeals he had filed with the Western Regional Office (minus two) was DENIED, even if other AICs filed for the same reason. Or "L.S.", would deny or partially deny the appeal, even if he actually received his requested relief, either by "L.S." or a different 'Acting' Western Regional Director. Cobb presents evidence to this fact. See Incident Report #298805, dated 05/17/2017, For Cobb, Cobb's DHO Report, and Brian Chandler, Reg. #11917-028, For Offense Code 104, dated 06/27/2017, and Chandler's Appeal Response, dated 02/07/2018, signed by "S. Unknown" versus Cobb's Appeal Response, dated 02/06/2018, Signed By "L.S.". Which led to Chandler's Incident Report being Expunged on 03/06/2018, while Cobb had to continue the Appeal process and go to court before he could get the Incident Report Expunged. Additionally, see the 01/15/2020 Response for Code 197, Illegal use of Telephone, and her Memorandum, EXHIBITS 63, 64. Including also, recently received, Cobb's Appeal to USP TUCSON's Complex Warden's Denial of one telephone call per month, per policy, Remedy ID# 1117288-R1, signed by "L.S.", dated 12/12/2022. Where he/she states, "As such, you should seek the use of the telephone through your Unit Team, and should be afforded the opportunity to have at least one phone call per month". Only to contradict him/herself in the next sentence by stating, "Based on the Above, your Regional Administrative Remedy Appeal is denied." Additionally, falsifying information in this Response concerning Cobb's daughter. See also EXHIBITS #126 - #135.

- 6-K -

## V.     REQUEST FOR RELIEF

State exactly what you want this court to do for you.  If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255.  Copies of these forms are available from the clerk's office.

Plaintiff(s) requested relief(s) is to: (1) grant all Federal TORT Claims in the separate amounts of (a) $100,000.00 for loss of property; (b) $100,000.00 for Loss of Property; (c) $2,000,000.00 for failure to protect Cobb from future harm by his SHU cellmate; (d) $2,000,000.00 for Failure to report sexual assault and provide STD Medications; (e) $21.74 for damaging photos delivered by the U.S. Mail while in the B.O.P.'s control; (f) $500.00 for the damage/censorship of U.S. Mail for Plaintiff Cobb; (g) $441.80 for the Loss of Property by failing to properly secure and document it in a timely manner; Punitive Damages in the amount of $300,000.00 against ALL liable named Defendant(s) for Claims 8 - 16; and appoint Counsel for Plaintiff(s) that are located in a different Country (Phillipines); Restore Cobb's UNICOR Longevity; Order Education Moves at 6:15AM

## VI.    JURY DEMAND (check one box below)                    (Continued on Page 7-A)

The plaintiff ☒ does  ☐ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on: _October 28th 2024_
(date)

FCI-Marion
P.O. Box 1000
_____
Street Address

Marion, ILLINOIS 62959
_____
City, State, Zip

_____
Signature of Plaintiff

Daniel Cobb
_____
Printed Name

24773-171
_____
Prisoner Register Number

_____
Signature of Attorney (if any)

Rev. 7/20/18                                   7

## V. REQUEST FOR RELIEF (Continued)

and 10:30AM (Approx. after count is completed) on Sundays or develope a different schedule for the weekend to provide eight (8) hours of time in Education; Remove any and all adverse documents concerning Plaintiffs (Daniel Cobb, Lucila Urbaneja, and J.C.) contacting each other; Expunge Incident Report for Code Violation, 399 Most Like 306, failure to Program, which was for requesting photographs of J.C. by Daniel Cobb to his mother; Declaratory Relief in the form of a ORDER to Colette S. Peters directing her employees to stop interfering with Plaintiffs' Constitutional rights concerning their communication with each other; Add the definition of the word "victim" to any appropriate B.O.P. Policy Statement; and also ORDER against Colette S. Peters halting any future retaliation by her employees against Plaintiff for exercising their Constitutional rights.



United States Penitentiary
Marion, IL 62959
Date: OCT 2 8 2024

The enclosed letter was processed through special mailing procedures for forwarding to you. If the writer has questions or problems over which the Bureau of Prisons has jurisdiction, this office cannot take any further action. For further information, you may wish to return the enclosed correspondence for any reason, please return it to the above address.

legal Mail

**UNITED STATES POSTAL SERVICE.**

**Retail**

**P**

**US POSTAGE PAID**

**$0.00**

Origin: 62959
10/28/24
1648600059-12

**PRIORITY MAIL®**

1 lb 12.90 Oz