IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

---

CASE NO. 3:24-cv-02392-JPG

---

COBB v. USA, et al

EXHIBIT A

FIRST AMENDED COMPLAINT

# UNITED STATES DISTRICT COURT

for the
Southern District of Illinois

Daniel Cobb
_____ )
_____ )  Case Number: __3:24-cv-02392-.JPG__
_____ )         _(Clerk's Office will provide)_
_____ )
        _Plaintiff(s)/Petitioner(s)_    )  FIRST AMENDED COMPLAINT
                                  )            ("FAC.")
            v.                    )  ☐ CIVIL RIGHTS COMPLAINT
                                  )  pursuant to 42 U.S.C. §1983 (State Prisoner)
UNITED STATES OF AMERICA, DANIEL  )  ☒ CIVIL RIGHTS COMPLAINT
SPROUL, R. McCAFFREY, MICHELLE DAUN, )  pursuant to 28 U.S.C. §1331 (Federal Prisoner)
R. BLAIR, LINDSEY OWINGS, JENNIFER )  ☒ CIVIL COMPLAINT
WEBER, D. HUGGINS, T. ROBERTSON,  )  pursuant to the Federal Tort Claims Act, 28 U.S.C.
            _Defendant(s)/Respondent(s)_  )  §§1346, 2671-2680, or other law
(Additional Defendants listed on Page 1-A.)  )  ☒ OTHER: 5 U.S.C. §§ 701-706; 18 U.S.C. §§
3625, 3626; 5 U.S.C. § 2302(b)(8)(A);
28 U.S.C. §§ 1361, 2401(b); 42 U.S.C. § 1997d;
28 C.F.R. § 540.60

I.    **JURISDICTION**

**Plaintiff:**

A.    Plaintiff's mailing address, register number, and present place of
      confinement.

      Federal Correctional Institution - MARION ("F.C.I.-MARION")
      P.O. BOX 1000
      Marion, Illinois 62959

      Registration #24773-171 / F.C.I.-MARION in Marion, Illinois

**Defendant #1:**

B.    Defendant _United States of America_____ is employed as
                  (a)      (Name of First Defendant)

      _Owner of Bureau of Prisons Agency_____
                  (b)      (Position/Title)

      with _Bureau of Prisons Headquarters located in_____
                  (c)      (Employer's Name and Address)

      _Washington, D.C._____

      At the time the claim(s) alleged this complaint arose, was Defendant #1
      employed by the state, local, or federal government?   ☒ Yes   ☐ No

      If your answer is YES, briefly explain:
      The United States of America is the proper Defendant pursuant to Title
      28 U.S.C. §§ 1346, 2671-2680, for the actions of Federal employees done in the
      scope of the employment for the Federal Government.

Rev. 10/3/19

-1-

Defendant(s) / Respondent(s)  (Continued)

C. Gauthier,
J. Gregory,
Unknown Huckleberry,
Unknown Austin,
Unknown Hearn,
R. Humphries,
Colette S. Peters,
Unknown Rhynard,
Edgardo Cosme,
Unknown Albright,
D. Verdugo,
C. Cedena,
Unknown Special Housing Correctional Officers in TUCSON, AZ at USP-TUCSON
John Doe #1, John Doe #2,

(

- 1-A -

**Defendant #2:**

C.    Defendant ___Daniel Sproul_____is employed as

(Name of Second Defendant)

Warden for F.C.I.-MARION_____

(Position/Title)

with Federal Bureau of Prisons_____

4500 Prison Road (Employer's Name and Address)
Marion, Illinois 62959

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government?    ☒ Yes    ☐ No

If you answer is YES, briefly explain:
Daniel Sproul was, and still is, the Warden for F.C.I.-MARION.

**Additional Defendant(s) (if any):**

D.    Using the outline set forth above, identify any additional Defendant(s).

Defendant #3: R. McCaffrey is employed as Associate Warden (Acting Warden) with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #4: Michelle Daun is employed as Case Management Coordinator with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #5: R. Blair is employed as Special Investigations Services ("S.I.S.") Lieutenant with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion IL.

Defendant #6: Lindsey Owings is employed as Chief Psychologist with Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #7: Jennifer Weber is employed as Sex Offender Therapist with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #8: D. Huggins is employed as S.I.S. Agent with the Federal Bureau of Prisons at F.C.I.-MARION 4500 Prison Rd., Marion, IL.

Defendant #9: T. Robertson is employed as Supervisor of Education with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #10:C. Gauthier is employed as Sex Offender Management Program Coordinator (SOMPC) with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., IL.

Defendant #11: J. Gregory is employed as Sex Offender Therapist with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #12: Unknown Huckleberry is employed as Operations Lieutenant ("Lt.") with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Rev. 10/3/19

Additional Defendant(s) (Continued):

Defendant #13: Unknown Austin is employed as Correctional Officer ("C/O") with the
Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #14: Unknown Hearn is employed as C/O with the Federal Bureau of Prisons
at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #15: R. Humphries is employed as UNICOR Director with the Federal Bureau
of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #16: **Colette S. Peters** is employed as Federal Bureau of Prisons Director
at the Federal Bureau of Prisons Headquarters in Washington, **D.C.**

Defendant #17: Unknown Rhynard is employed as **S.I.S. Agent with** the Bureau of Prisons
at United States Penitentiary-TUCSON, 9300 S. Wilmot St., Tucson, AZ.

Defendant #18: Edgardo Cosme is employed as Registered Nurse with the Bureau of Prisons
at U.S.P.-TUCSON, 9300 S. Wilmot St., Tucson, AZ.

Defendant #19: Unknown Albright is employed as Special Housing Unit ("SHU") C/O with
the Federal Bureau of Prisons at U.S.P.-TUCSON, 9300 S. Wilmot St.,
Tucson, AZ.

Defendant #20: D. Verdugo is employed as C/O with the Federal Bureau of Prisons at
U.S.P.-TUCSON, 9300 S. Wilmot St., Tucson, AZ.

Defendant #21: C. Cedena is employed as Property Officer with the Federal Bureau of
Prisons at U.S.P.-TUCSON, 9300 S. Wilmot St., Tucson, AZ.

Defendant #22: John Doe #1 is employed as SHU C/O with the Federal Bureau of Prisons
at U.S.P.-TUCSON, 9300 S. Wilmot Rd., Tucson, AZ.

Defendant #23: John Doe #2 is employed as SHU C/O with the Federal Bureau of Prisons
at U.S.P.-TUCSON, 9300 S. Wilmot Rd., Tucson, AZ.

At the time the claims alleged in this amended complaint arose, all of the above
Defendants were employed by the Federal Government.
Theywere Federal Officers employed by the Federal Bureau of Prisons Agency.

All of the above listed Defendants are being sued in their individual capacity,
except for ALL the U.S.P. - TUCSON Defendants, who are being sued in their official
capacity, for their actions or inactions taken in the scope of their employment.

- 2-A -

## II.    PREVIOUS LAWSUITS

A.    Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?  ☒Yes ☐No

B.    If your answer to "A" is YES, describe each lawsuit in the space below.  If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline.  **List ALL lawsuits in any jurisdiction and indicate the court where they were filed to the best of your ability,** including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)).  FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

1.    Parties to previous lawsuits:
Plaintiff(s):
Daniel Cobb

Defendant(s): Catricia Howard, L. Unruh-Parker, M. Mitstifer, Edna Lara, Amanda Stargl, A. Gallion, James Hayden, D. McNamera, Amy Morila, C. Cole, Antonietta Estrada, K. Garcia, Lorri Mitchell, Unknown Diabueno, M. Mack, D. Madrid, Ann Ash, S. Waite, S. Bass, B. Schuler, C. Schuler, J. Williams, J. Alexander, J. Cox, V. Ramsey, S. Johnson, B. Von Blanckensee, B. Byler, Ybarra, J. Hayden, A. Mulcahy, A. Cristinzio, J. Ciufo, S. Sargent, C. Radford, R. Carabajal, Haight-Biehler, and others.

2.    Court (if federal court, name of the district; if state court, name of the county):  District Court of Arizona, Tucson Division

3.    Docket number: 4:21-cv-00241-TUC-JAS

4.    Name of Judge to whom case was assigned:  James A. Soto

5.    Type of case (for example: Was it a habeas corpus or civil rights action?): Civil rights case

6.    Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Dismissed as MOOT; Appealed; Appeal is still "Pending".

Rev. 10/3/19

-3-

7.    Approximate date of filing lawsuit:   June 4th, 2021

8.    Approximate date of disposition:
For the District Court: April 5th, 2023

9.    Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?"

YES. Dismissed as "MOOT" due to transfer out of U.S.P.-TUCSON.

## III.    GRIEVANCE PROCEDURE

A.    Is there a prisoner grievance procedure in the institution?  ☒ Yes     ☐ No

B.    Did you present the facts relating to your complaint in the prisoner grievance procedure?                                        ☒ Yes    ☐ No

C.    If your answer is YES,
1.    What steps did you take?
Filed Standard 95 Form to the Western Regional Office in California for ALL TORT Claims. Sent Certified Mail on 10/16/2023.
Filed all Informal Resolutions (BP-8s), Administrative Request (BP-9s), Regional Appeals (BP-10s), (General Counsel) Central Appeals (BP-11s)

2.    What was the result?
No reply to ALL Standard 95 TORT Claims.
All Requests and Appeals were DENIED.

D.    If your answer is NO, explain why not.

E.    If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?                          ☐ Yes    ☐ No

F.    If your answer is YES,
1.    What steps did you take?

Rev. 10/3/19

-4-

2.    What was the result?

G.    If your answer is NO, explain why not.

H.    Attach copies of your request for an administrative remedy and any response you received.  If you cannot do so, explain why not:

Plaintiff is attaching his Administrative Remedy Generalized Retrieval, which shows that Plaintiff has exhausted his Remedies for all claims. As it is the Defendants' defensive burden to allege and present evidence that Plaintiff has not exhausted his available remedies.
(See Attach Exhibit 1, Administrative Remedy print out.)

Rev. 10/3/19

-5-

## IV.    STATEMENT OF CLAIM

A.    State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated. Do not include legal arguments or citations. If you wish to present legal arguments or citations, file a separate memorandum of law. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

Claim #1; Federal TORT Claim;(Authorized Deprivation of Property) For $100,000.00
On 11/10/2022 at 10:15AM, Defendant Rhynard searched my Cell at USP-TUCSON (Cell 214) in Echo One Unit. He confiscated the property, letters from my adult daughter, and numerous photographs my adult daughter sent me. At approximately 10:45AM, Defendant Rhynard met with me in the Lt.'s Office and showed me the items he confiscated and questioned me about them. He then showed me the letter that I put in the mail box to be mailed to her. Then told me I was going to the SHU for an "investigation" into code violation 196, Illegal Use of Mail. He did not supply me with a confiscation form. I was transferred (successfully) on 12/14/2022. I did not receive a confiscation form from Defendant Rhynard before I left. In February 2023, I received my property sent to me, the items he confiscated were not in my property, I inquired about the items through staff at F.C.I.-MARION, they responded by giving the S.I.S. Response from USP-TUCSON. That the items were not found.
I am requesting relief in this TORT Claim of $100,000.00 for the items lost by Defendant Rhynard in the scope of his official duties, where the UNITED STATES is responsible for this action, due to not returning the items to me after the investigation was over on 12/07/2022.

Claim #2; Federal TORT Claim; (Authorized Deprivation of Property) For $100,000.00
On 11/10/2022 at 10:45AM, I was transferred to the SHU from the Lt.'s Office. My property was not itemized or "packed up" until four (4) days later on 11/14/2022. For unknown reasons, Defendant Verdugo listed only five (5) items on my property list. My property was then given to Defendant C. Cedena, property officer. The items listed on the property sheet were: 1 Legal Materials, 1 Personal Papers (Letters from family from 9 yrs.), 1 photo "stack" (Over 300 photographs received through 9 yrs from family.), 1 Athletic socks, 1 Beanie hat.  On 12/13/2022, I was in the SHU, and told to sign a property sheet dated 12/13/2022, even though I did not pack the property listed on the sheet, nor witnessed the property put in boxes. These two (2) property sheets do not match, and the "Stack" of photos are not listed on the 12/13/2022 property sheet. When I received my property at FCI-MARION, the letters and photos were not in the 2 boxes. The letters also include letters my, now late, grandmother sent me. I am seeking the sum certain amount of $100,000.00 against the UNITED STATES for the negligence of its employee (Verdugo) while packing my property and C. Cedena for negligence in handling my property, when they acted in the scope of their duties as employees of the Government.

Rev. 10/3/19

Claim #3; Federal TORT Claim; (Failure to Protect) For $2,000,000.00

On 11/10/2022, I was transferred to the SHU for an investigation into me exercising my fundamental constitutional rights with ordinary firmness. (Parental RIghts and Parent-Child Relationship under the 1st and 14th Amend.) I was placed into a cell with a person who claimed to be a non-sex offender. This individual was the opposite race (Black) and religion (Muslim). After John Doe #1 left me with this adult in custody (AIC), I was told by the AIC that I was on "food restriction" (giving all food to him first), and that I was going to perform oral sex on him, as well as being raped by the AIC later. I was not allowed near the door to alert staff, if I did not do as told I would be assaulted by the AIC.

After not eating dinner that was served, AIC made good on his promises. When I was forced to perform oral sex on him and was later anally raped. After seeing feces on his penis, AIC berated me and told me that he was not going to rape me again. The following day, 11/11/2022, Veteran's Day, cell rotation was conducted. At that time, I decided to escape this AIC's abuse I would place my head in the door track, repeating what I did in May 2017. Where I was then removed from the cell and placed in a isolation cell, where I could report the sexual abuse. John Doe #1 and John Doe #2 were present during the cell rotations. John Doe #1 placed me in cell #119, and when the door was shutting, I placed my head in the track, the door closed on my head. John Doe #1 called to open the door, and then shoved my head BACK into the cell, and called to close the door. Again, I placed my head in the door, squeezing my head, he called for the door to be opened, and shoved my head back into the cell with the AIC. And, he called to open the door, the AIC then pressed his body against mine, pinning me to the wall, and called for John Doe #1 to shut the door. Yelling "I got him". The door closed with me on the inside of cell 119, with my attacker. That night, while I slept, I was attacked, hitting the back of head so hard that I saw a big white light. I screamed out of shock, the cell across from mine heard my scream. I was not assaulted the rest of the day, but feared I would be and refused to sleep due to this fear. That night, I stayed up waiting for another attack. The next day, 12/13/2022, after being allowed a small amount of food, I placed the food tray by the door, for pick up later, and when I rose up from the floor, I was struck in the back of my head, again. I turned around, and was struck again, in the jaw. I was knocked unconscience. When I regained full conscienciness, I was in bed, with toilet paper on my head, bleeding. AIC was in shower, washing blood off. He told me that when he hit my jaw, I was knocked out and fell onto the raised shower floor corner and hit my head. And that I could lie to the C/Os and say that I "slipped in the shower" and hurt myself. I took this as an opportunity to get away from my attacker, and agreed. I was allowed to go to the door, and try to get help. I was later removed from Cell 119, and brought to the Nurse's Station in the SHU. Where I reported the sexual and physical assault to Defendant Edgardo Cosme, and Defendant Albright. Due to the negligence of Federal Officers, John Does #1 and #2, in their inactions within the scope of their duties, I am requesting relief in the sum certain amount of $2,000,000.00 for failing to protect me from myself and my cellmate's future attacks.

- 6-A -

Claim #4; Federal TORT Claim; (Failure to Report Sexual Assault, not providing Meds.)
On 11/13/2022, I was punched in the jaw by my cellmate, AIC, causing me to be "knocked out", i.e., unconscience. I was told by my attacker that I fell forward after he hit me and I hit my head on the raised edge of the shower floor. I was allowed to go the door and report the injury to staff, Defendant Albright. Defendant Albright responded that medical is "busy". I showed him my open wound and demanded medical attention. I took over the door trap (placed my arm in the small door) not allowing the door to close. Telling him to contact a LT or medical. I was subsequently brought to Defendant Edgardo Cosme, RN. I told Defendants Edgardo Cosme and Albright about sexual and physical assaults. After being treated for my head wound. I was placed in a "hard cell" that has no working water, and no shower. After what appeared to be 1-2 hours, I was transferred to the medical observation room, where the bathroom and shower was locked. To prevent washing any DNA. Even though the sexual assault happened 3 days prior. I was given a small container to urinate in. I was told I would go to the hospital the next day. The next morning, I was given my prescribed medications by NP-C R. Archuleta, I inquired about my upcoming hospital trip, due to sexual and physical assaults, he was unaware of them. Archuleta then reported the sexual and physical assaults and I was sent to the hospital. Where I was x-rayed (my chest and jaw) and had a MRI completed on my head, and a Rape Survivor Key was performed on me. Before being discharged, I was prescribed STD medications. As precautionary measure. When I arrived back to the SHU at USP-TUCSON, I was placed back in a "hard cell" (no shower) and a investigation was conducted by BOP Staff, the following day. The water for sink and toilet was turned on. I requested my medications that the hospital prescribed to me, but my requests fell on deaf ears, I never received any medications from Edgardo Cosme, nor any staff (medical or otherwise) while at USP-TUCSON. After being transferred to FCI-MARION, I requested my medical records, and saw that Albright, nor Edgardo Cosme did not report that I was sexually assaulted, immediately after I reported the sexual assault. Due to the negligence by Defendants Albright and Cosme, I am requesting the sum certain amount of $2,000,000.00 against the UNITED STATES for the negligence of it's employees within the scope of their duties as Federal Officers by not immediately reporting the sexual assault.

Claim #5; Federal TORT Claim; (Damage to United States Mail by Federal Employees)
On 06/07/2022, I received photocopies of the 4x6 photos that my mother sent to me. The photocopies of each photo were 2x2 inches, and in color. Due to the size of the 2x2 photos, the top and bottom of the photos were cropped. Causing damage (or censor) of each photo, since I did not receive the photos in their original size. Additionally, I was told (through a memorandum) that I was responsible to mail the original photos back to my mother, which is against B.O.P. Policy (Policy Statement 5800.10). I am requesting a sum certain amount of $21.74 for the damage and the reimbursement of the cost of mailing the photos that is the responsibilty of the BOP. This $21.74 is against the UNITED STATES for the actions of Federal Officers in the scope of their duties as mail clerks, pursuant to B.O.P. Policy Statement 5800.10, Mail Management Manual.

- 6-B -

Claim #6: Federal TORT Claim; (Damage to U.S. Mail by Federal Employees) For $500.00
On 06/15/2022, I received a copied letter from my mother, which was shrunk down. During reading the letter, I noticed that there was line that was censored. I inquired about the censorship/damage to the person over the mail room, he replied that he would have the letter recopied. I received the recopied letter, but the line was still censored even though it was full (regular) size. This line that was censored appears to be concerning my adult daughter. Therefore, I am requesting the sum certain amount of $500.00 for the censorship/damage to mail sent to me, concerning my adult daughter, against the UNITED STATES for the negligent actions committed by it's federal employees in the scope of their duties.

Claim #7: Federal TORT Claim; (Loss of Property) For $441.80
On 11/10/2022, I was transferred to the SHU. My property (i.e., commissary purchases) were not secured properly, and was not itemized until 11/14/2022, Defendant D. Verdugo. The property list shows only five (5) items.
On 12/13/2022, I was handed a property list that had more items on it, and told to sign it. I was told that this is your property that was packed up and you will receive it at your next institutiton. I arrived at FCI-MARION on 12/27/2022, and received my property on 02/23/2023. I am missing $441.80 of property that was not pack up before it left USP-TUCSON.
I am requesting the sum certain amount of $441.80 for the negligence of the employees that mishandled my property that caused the missing items not to be packed up and mailed to me at FCI-MARION. The UNITED STATES is the proper Defendant for this TORT Claim.

Claim #8: Interference with access to courts. (No Education Moves During Weekends)
On 09/05/2023, the Defendant T. Robertson, generated a Memorandum for the Inmate Population ("Memo."). The Memo. states that the Sunday hours have changed, being there is NO HOURS on Saturday for the Education Department. In the Memo. she states that the leisure library will be open during the following hours: 6:15am-9:30am, 10:30am-3:15am. In addition, the law library (a separate room) will be open from 12:00pm-3:15pm. The leisure library is where inmates can access legal materials that are not in law library. Such as, tyupewriters, the only inmate copier, Law Reference Books, a printer to print law cases, and a scale to weigh out going (legal) envelopes with its contents. The BOP Policy Statement (PS) 1542.06, states, in part, that: "The warden shall assign a staff member (ordinarily the Supervisor of Education) responsibility for he inmate library." ... Staff responsible for the inmate library are to ensure that the library offers: [] #daily hours in proportion to inmate needs, with evening and weekend hours. The library shall be open for a minimum of three hours daily and eight hours over the weekends."
I was given a due date in November 2023 by the Court of Appeals to file my reply brief, I was under this deadline, and was not able to access the leisure library, due to the moves not taking place like they were directed to by T. Robertson. I am requesting that this Court grant me Injunctive Relief in the form of a Order, directing the Education Moves to be conducted as listed in the T. Robertson's Memo. Giving consideration that this Memo. is STILL not being followed by FCI-MARION, to this day, and the allowance of this eight hours, as prescribed by BOP Policy would help ensure that this instant action would not be delayed any more than necessary.

- 6-C -

Claim #9: FIRST AMENDMENT RETALIATION; (Fired From UNICOR for Filing Claim #8.) Due to the Temporal Proximity of filing the administrative remedy for Claim #8, and my termination of my UNICOR employment/enrollment. I firmly believe that I have had adverse actions taken towards me (terminated from UNICOR and moved out of "B" Unit (located across the hall from Education)) due to filing, and not withdrawing my administrative remedy for Claim 8. I am requesting as relief that my "longevity" be reinstated. Which was removed after I was terminated from UNICOR for the so-called "appearence" of stealing, three days after I received the BP-9 response, and told to wait for six (6) months before coming back. This lack of longevity caused my "pay grade" to be reduced back the lowest pay grade (5 = .23/hour). When I was making .69/hour when I was wrongfully terminated.(3 = .69/hour)

Claim #10: 28 U.S.C. § 1331; ORDER Colette S. Peters to Define "VICTIM(S)" in ALL BOP POLICIES.

On 09/26/2013, my sentencing hearing was held. During the hearing, my instant offense victims' (who were sisters) family requested a "No-Contact" Order through the AUSA. The judge granted the order, orally pronouncing "The judgment should reflect that the defendant [Daniel Cobb] is not to have -- upon release and on supervised reelease -- is not to have any contact with the victims or the victims' family." The instant offense victims and their family are not related to anyone in my family.

My Presentence Investigation Report (PSIR) mentions uncharged conduct in Paragraph 45. Part of the uncharged conduct, is alleged conduct that I was sexual with my daughter. Though no charges were brought with her as the subject, no conviction involved her as well.

The Sex Offender Management Program Policy Statement ("PS") 5324.10, uses the term "victim(s)", but does not define this term. As a result, after arriving at FCI-MARION on 12/27/2022, I was making connected phone calls to my, now adult daughter (20 at the time), discussing her work and living in the United States, including whether or not to go to college. All calls were accepted and wanted by her. She, at no time, contacted FCI-MARION and requested that I be prevented from having communication with her. Yet, Defendants Lindsey Owings and Jennifer Weber decided to wrongly apply PS 5324.10 to me contacting my adult daughter by:
(1) Improperly labeling my daughter as a "victim", instead of a "alleged victim"; (2) That I am violating my no-contact order by contacting my adult daughter, that is in my Judgment and Commitment Order; (3) Also, contacting my wife is a violation of my Judgment and Commitment Order. These actions originated at USP-TUCSON, through the Psychology Department. And continued here at FCI-MARION. Showing a pattern and practice of violating my fundamental Constitutional rights for exercising my rights with ordinary firmness, by prohibiting me from contacting all the members of my immediate family, who live abroad in a 3rd world country (Phillipines). Specifically, on 01/20/2023, Jennifer Weber authored a Correctional Management Plan (CMP) against me, due to her finding out that I was contacting my adult (20 yr old) daughter by telephone. Even though no conversations between my daughter and I were concerning anything sexual. On 03/02/2023, Lindsey Owings met with me about the CMP and disagreed with me that my Constitutional rights were being violated, applying the B.O.P. Policy 5324.10's use of the term "victim(s)" to my adult daughter. Thereby, I gave her notice that her subordinates and her are violating my parental rights and severing my parent-child relationship without any procedure and substantive Due Process, before and after, the decision. (First Amendment and Fourteenth Amendment.)

- 6-D -

Weber's and Owings's decision to violate my Constitutional rights are based on my PSIR, yet the PSIR does not name my daughter a "victim", but instead it describes allegations of abuse that are considered in the PSIR as "Offense Behavior Not Part of Relevant Conduct", in which there was no charges brought against me, and no conviction for the behavior. To this day, I am prohibited from contacting my wife and adult daughter. (My immediate family, that wants and welcomes any contact with me.) If I do contact my wife and/or my adult daughter, I would be subjected to: (1) an Incident Report; (2) Taken to SHU; (3) Placed on another CMP; (4) Potentially lose most of my commissary property; (5) Possibly placed in a cell with another violent AIC; (6) Found Guilty of the Incident Report and receive sanctions, up to loss of good time; (7) Waiting for the Regional Office to expunge it, all the while delaying my transfer to a institution closer to my parents. (Within 500 Driving Miles pursuant to the First Step Act.) All of the above would occur due to the Defendants' belief that I am violating my Judgment and Commitment Order, and that they are following BOP PS 5324.10, and PS 5110.17 since there is not a definition of the term "victim(s)". (Defendants D. Sproul, R. Blair, D. Huggins, R. McCaffrey, M. Daun, L. Owings, J. Weber, J. Gregory, C. Gauthier all share these beliefs.) The above Policies do not define the term "victim(s)" to mean  a person directly involved with a offense that a AIC has been found guilty of and sentenced for that offense. Be it, past or instant offenses. As this Court defines the term "victim(s)" and separates that term and the rights that accompany it, with the term "alleged victim(s)".

    For the above reasons, I am requesting that this Court grant injunctive relief in the form of a ORDER directing Colette S. Peters, the Policy Maker for the B.O.P. to add the definition of the term "victim(s)" to any B.O.P. Policy that uses the term "victim(s)", including PS 5324.10, and PS 5110.17.

Claim #11: FIRST AND FOURTEENTH AMENDMENTS VIOLATIONS; (My Wife, Lucila Urbaneja) While at USP-TUCSON, in AZ, on 10/07/2019, three days before my DHO hearing, my Staff Representive, Amanda Stangl, wrote a memorandum for the USP-Tucson warden to approve, prohibiting any and all communication between my wife and I. This memorandum was written in secrecy and guarded from me, after it's approval. I was not given written notice of this decision, even when I asked for written notice of the reasons for it. This memorandum recommended that all my wife's contact information be blocked, her mailing address, E-mail address, telephone numbers. Also, the memorandum prohibits any visits as well. Severing all ties with her. Amanda Stangl uses mal-information as reasons for this violation of my Constitutional rights. Specifically, (A) Lucila "is the mother of one of COBB's minor victims"; (B) "This request is being made in order to protect this minor victim"; (C) "and abide by various court orders, ordering no contact." Even going so far as stating that contacting my wife "to discuss the status of victim" as a reason, though there was no conviction with my family. On 01/24/2023, I requested my wife be added to my visitor list. She was added by my Counselor S. Hicks, that day. On 02/24/2023, my visitor list reflected that my wife was deleted (Un-approved). Meanwhile, on 01/15/2023, I asked Defendant Michelle Daun if she believed that I should not contact my adult daughter, as well as my wife? She replied, "yes". On 01/20/2023, I was placed on a CMP, later that day I saw my wife's contact information was blocked.
I filed administrative remedies for my wife's contact information to be

- 6-E -

unblocked and her visiting to be restored. The warden's response included language consistent with Amanda Stangl's Memorandum blocking my wife's contact information and visiting, prohibiting me from having any contact with her. This language causing an "continuing violation" of my right to communicate with my wife, violating my Intimate and Familial Association protected by the First and Fourteenth Amendments of the U.S. Constitution. On 01/14/2023, S.I.S. Lt. R. Blair, called me to his office and told me that I am not allowed to contact my wife and adult daughter because his understanding, by M. Daun, that I am violating my Judgment and Commitment Order by contacting my wife and daughter. Also, D. Huggins threatened my life if he was to find out that I was in the SHU for having any contact. My administrative remedies were signed by R. McCaffrey denying my wife's contact be unblocked, along with her visits as well.

All of my responses involved using the term "victim" to describe my adult daughter, and citing my Judgment and Commitment Order's No Contact Order in my supervised release condition as the reasons for denial of my requests. For the reasons stated above, I am requesting relief of $300,000.00 in punitive damages against ALL listed above Defendants for violating my right to have a relationship with my wife.

Claim #12: FIRST AND FOURTEENTH AMENDMENT; (Severing Parent-Child Relationship) On 12/16/2022, after I was at Oklahoma Transfer Center, my telephone was unrestricted by the TRUST FUND Supervisor. I began contacting my adult daughter, then 20 yrs old. On 12/27/2022, I arrived at FCI-MARION, and continued to have wanted contact with her over the phone. Discussing her work, church, future education, and life in general. Nothing sexual was discussed. On 01/10/2023, Michelle Daun was served through the AZ Court a SEALED Declaration from the S.I.S. Lt. in USP-TUCSON. Where he discussed his beliefs that I should not have contact with my adult daughter and wife. On 01/14/2023, I was called to S.I.S. Lt. R. Blair's office, where he told me that I was prohibited from contacting my adult daughter, from today on, or I will be put in the SHU. S.I.S. Agent D. Huggins then added that if he found out I had contacted my daughter he would put me "under the SHU and no one would find [my] body until years later, after an anthropological dig." I took this as a death threat. The following day, I told Michelle Daun that I spoke with R. Blair, she said she knew and told him to speak with me about my adult daughter. I asked her if she believed that I should not contact my wife as well? She replied "yes". On 01/20/2023, I was placed on CMP by J. Weber, and told not to contact my wife and daughter, direct or indirectly. Later that day, my wife and adult daughter's contact information was blocked. On 01/24/2023, I requested my wife be added to my visitor list, she was added that day. I did notice that my adult daughter, who was already added to my visitor list, had her status changed to "EDT" (Un-Approved). This caused no available alternative means of communication with my adult daughter and my wife. On 02/24/2023, I saw that my wife and adult daughter were removed from my visitor list completely. On 03/02/2023, I met with Lindsey Owings. She gave me the records I requested and we discussed the CMP and my Constitutional rights concerning my wife and adult daughter. She did not agree that the CMP was violating any right, and that it was her and her staffs' job to prevent me from communicating with my wife and adult daughter. I filed administrative remedies concerning my adult daughter and I having contact. The responses all stated that my adult daughter was a "victim" and that I was violating my Judgment and Commitment Order by having contact with her. Contrary to the exhibits I provided from the First Circuit Court of Appeals.

- 6-F -

As of this day, I have not been placed in the SHU, and do not desire to be placed there, where I might be killed by D. Huggins. For this reason, and due to the pattern of retaliation committed by employees at FCI-MARION, I am requesting that this Court be ready to intervene with any adverse tatics by these Defendants, and halt any adverse actions that I report to this Court during this litigation. (Minus a transfer to FCI-BUTNER, or FCI-MARIANNA.)

Lastly, on 01/26/2024, Joshua Gregory met with me and told me not to contact my adult daughter, or I will be placed on another CMP, causing a Incident Report, and a trip to the SHU, where I would possibly be killed by D. Huggins, if he were to find out.

On 02/26/2024, C. Gauthier met with me, along with SOMP Treatment Specialist, SOMP-Psychologist where they all agreed and told me not to have contact with my wife and adult daughter, or I would be placed in SHU with a incident report. That days Psych. Record includes false info., stating that my adult daughter is one of my "victims of his sexual offenses". Which does not reflect the names of the victims listed in the Victim Notification System ("VNS"). All the above Defendants threatened me with a incident report, a transfer to the SHU, placement on a CMP, with D. Huggins going so far to threatening my life, if I contacted my adult daughter again. Silencing my Constitutional right to have and maintain Familial Relations [or Association], including severing my Parent-Child Relationship, and did not provide any opportunity to be heard in a meaningful way before or after violating my rights.

For all the above reasons, I am requesting Punitive Damages in the amount of $300,000.00 per each listed liable Defendant listed above. The reasons for these Punitive Damages is to: (1) Punish each liable Defendant, and deter any future Federal employee from interfering with my Constitutional rights; (2) Due to all the above Defendants have been made aware of my previous litigation, and that the previous Defendants were held to answer to the previous Complaint, in Tucson, Arizona.

Claim #13: Civil Conspiracy.

Defendants AW R. McCaffrey, CMC Michelle Daun, S.I.S. Lt. R. Blair, S.I.S. Agent D. Huggins, Chief Psychologist Lindsey Owings, J. Weber, C. Gauthier, J. Gregory agreed among themselves to prohibit Plaintiff from contacting his adult daughter and wife, violating his fundamental Constitutional rights of Parent-Child Relationship, Familial Relations, and Intimate Association with his wife, concerning the status of their daughter.

Each had their own position and role to play in this conspiracy. Spelled out in previous claims (10-12).

AW McCaffrey's role was to sign for the Warden for any administrative remedies filed concerning Plaintiff's family. M. Daun had the S.I.S. Lt. R. Blair and D. Huggins to order Plaintiff directly not to contact his adult daughter and wife. J. Weber was to author and place on Plaintiff a CMP. L. Owings was to approve and agree with the CMP. C. Gauthier and J. Gregory were to remove the CMP, but still order the Plaintiff not to contact his wife and adult daughter. All joining forces and departments to prevent Plaintiff from having any contact with his immediate family.

Plaintiff requests $300,000.00 in Punitive Damages for the acts of Conspiracy against Plaintiff's Constitutional rights being violated.

It appears that CMC Daun headed this conspiracy because of the Declaration she recieved through the Arizona Court on 01/10/2023. Starting the above events to take place.

- 6-G -

Claim #14:   28 U.S.C. § 1331; Remove "Stalking"Memorandum in My Central File.
On September 29, 2022, I was given a stalking memorandum to sign, and it was placed in my "Privacy" Section of my Central File.
The reason for this "Stalking" Memorandum is because I was trying to get the DHO and other B.O.P. employees at USP-TUCSON to follow the Western Regional Director's response to Expunge the 397 Code Violation that was dated on April 26, 2020. I requested for this Memorandum to be removed, and my request was denied. My Central File is now with me at FCI-MARION, which causes this Warden, D. Sproul to be the proper Defendant to request this relief. As he is in control of the actions by his employees at FCI-MARION. Especially, due to the Code 397 being expunged by the DHO at FCI-MARION after the DHO at USP-TUCSON refused for 2 years.
The "Stalking" Memorandum was written after I was told by my Case Manager at USP-TUCSON to contact her, when my former Unit Manager told me that my case manager could expunge it, while I was speaking to a member of the Western Regional Office, during a visit at USP-TUCSON.
Therefore, having already discussed this subject at length with the DHO at USP-TUCSON, she was tired of answering e-mails about it, and directed a Lt. to write a "Stalking" Warning Memorandum against me. All for trying, with due diligence to try and get the Code 397 expunged, as directed by the Regional Director.
Plaintiff is requesting that the adverse, exaggerated "Stalking" memorandum be removed from his Central File's Privacy Folder, so that it cannot be used against him in the distant or near future.

Claim #15:   Injunctive Relief; Remove/Expunge Incident Report #3064567
On 07/13/2017, I was placed on a CMP due to exercising my Constitutional rights of maintaining a parent-child relationship with my daughter.
On 12/07/2017, an S.I.S. technician contacted the SOMP Coordinator and asked permission to write me a Incident Report ("I/R") for requesting photographs to my mother,over the telephone, of my daughter that were taken on a cruise. The S.I.S. technician wanted to use the CMP as the basis for the I/R. I was subsequently found guilty due to the inappropriate placed CMP by the same DHO who a few months prior expunged 2 I/Rs concerning having actual contact with my daughter.
   On 12/27/2022, I arrived at FCI-MARION, and am now under a different warden (Daniel Sproul), who has the ability and authority to expunge this inappropriate I/R, that I was wrongly found guilty of. I have a fundamental right to contact and possess photographs of my daughter, who was not the subject of any charges, convictions, or sentencing. Additionally, she, nor her mother, have contacted this (or any other) prison, requesting that I not have communication with her or her mother. My communication with my daughter is WANTED as well. Thereby, there is no legitimate penological interest in preventing me from having contact with my daughter.
   Therefore, I am requesting that Daniel Sproul be ordered through injunctive relief, to expunge the 399 Most Like 306 I/R (#3064567) from my central file and the DARTS program.

- 6-H -

V.    REQUEST FOR RELIEF

State exactly what you want this court to do for you. If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255. Copies of these forms are available from the clerk's office.

Plaintiff requested relief(s) is to: (1) GRANT all Federal TORT Claims in the separate amounts of (a) $100,000.00 for loss of property; (b) $100,000.00 for loss of property; (c) $2,000,000.00 for failure to protect Cobb from himself and his then, SHU cellmate; (d) $2,000,000.00 for failure to report a sexual assault and not providing prescribed STD medications; (e) $21.74 for damaging photos delivered by the U.S. Mail while in Defendant's custody; (f) $500.00 for the damage/censorship of U.S. Mail for Plaintiff; (g) $441.80 for the loss of property by failing to properly secure and document it in a timely manner; (2) Injunctive relief through a Order directing the education moves described in T. Robertson's memo. be followed; (3) Cobb's longevity be restored with UNICOR's database; (4) Injunctive Order for C. Peters to define "victim(s)" in all

VI.    JURY DEMAND (check one box below)                    (Continued on P. 7-A)

The plaintiff ☒ does    ☐ does not request a trial by jury.


## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions. I also declare under penalty of perjury that the foregoing is true and correct to the best of knowledge, belief, and information supplied to me, and this FAC was deposited into the Institution's Legal Mail System on December 3rd, 2024.

Signed on: December 3rd, 2024
                    (date)

F.C.I.-MARION
P.O. BOX 1000
_____
        Street Address

Marion, Illinois 62959
_____
        City, State, Zip

_____
    Signature of Plaintiff

Daniel Cobb
_____
      Printed Name

24773-171
_____
  Prisoner Register Number

_____
Signature of Attorney (if any)

Rev. 10/3/19

-7-

## V. REQUESTED FOR RELIEF (CONTINUED)

B.O.P. Policies where the term "victim(s)" is used; (5) $300,000.00 in Punitive Damages against all liable Defendants for violating Plaintiff's fundamental Constitutional rights (Familial Relations (Association) and Parent-Child Relationship); (6) Declaratory Order to C. Peters to direct her employees to remove ALL adverse documents and incident reports concerning Plaintiff's family (Code 399 M/L 306) and to halt any ongoing retaliation against Plaintiff for contacting any member of his family and halt any future adverse actions against Plaintiff at future institutions during the rest of his incarceration. (7) Injunctive Relief of an Order directing either Daniel Sproul or C. Peters to EXPUNGE I/R #3064567 from my Central File; (8) I am requesting Nominal Damages against all liable Defendants; (9) Injunctive Relief in the form of an ORDER directing the Psychology Defendants to remove a CMP, if one is still currently placed on me, and to remove any adverse records that contain or mention me contacting my daughter and/or wife; and to Halt any future retaliation towards myself or anyone in my family for having contact between us. (10) Injunctive Relief in the form of a "Pre-Enforcement Order" against B.O.P. Director Colette S. Peters to direct her employees to stop any future harassment towards myself or anyone in my family when we have contact.
(11) Unblock all of my wife's and adult daughter's contact information and/or restore my Public Messaging (E-Mail) privilege to ensure that I have an available alternative means of communication with my wife and adult daughter.
(12) Injunctive Relief against BOP Director Colette S. Peters directing her to conduct a impeachment hearing against any liable Defendants, as a deterrent from future violations of Plaintiff's fundamental Constitutional rights.

- 7-A -