# UNITED STATES DISTRICT COURT

for the

Southern District of Illinois

DANIEL COBB _____ )

_____ )  Case Number: __3:24-cv-002392-JPG__

_____ )        *(Clerk's Office will provide)*

_____ )    SECOND AMENDED COMPLAINT

*Plaintiff(s)/Petitioner(s)* )    [ ] CIVIL RIGHTS COMPLAINT

v. )    pursuant to 42 U.S.C. §1983 (State Prisoner)

)    ☒ CIVIL RIGHTS COMPLAINT

UNITED STATES OF AMERICA, DANIEL ____ )    pursuant to 28 U.S.C. §1331 (Federal Prisoner)

SPROUL, R. MCCAFFREY, MICHELLE DAUN, )    ☒☒ CIVIL COMPLAINT

R. BLAIR, LINDSEY OWINGS, JENNIFER ___ )    pursuant to the Federal Tort Claims Act, 28 U.S.C.

WEBER, D. HUGGINS, T. ROBERTSON, ____ )    §§1346, 2671-2680, or other law

*Defendant(s)/Respondent(s)* )

[X] OTHER: 5 U.S.C. §§ 701-706; 18 U.S.C. §§ 3625, 3625; 5 U.S.C. § 2302(b)(8)(A); 28 U.S.C. §§ 1361, 2401(b); 42 U.S.C. § 1997d; 28 U.S.C. § 540.60

## I.    JURISDICTION

**Plaintiff:**

A.    Plaintiff's mailing address, register number, and present place of confinement. Registration #24773-171
Federal Correctional Institution - MARION ("F.C.I.-MARION")
P.O. BOX 1000
Marion, Illinois 62959

Located in Marion, Illinois.

**Defendant #1:**

B.    Defendant __United States of America__ is employed as
(a)        (Name of First Defendant)

__Owner of Federal Bureau of Prisons Agency__
(b)        (Position/Title)

with __Federal Bureau of Prisons Headquarters located in__
(c)        (Employer's Name and Address)

__Washington, D.C.__

At the time the claim(s) alleged this complaint arose, was Defendant #1 employed by the state, local, or federal government?    ☒ Yes    ☐ No

If your answer is YES, briefly explain:
The United States of America is the proper Defendant pursuant to Title 28, Sections 1346 and 2671-2680, for actions of Federal employees done in the scope of of their employment for the Federal Government.

Rev. 10/3/19

- 1 -

Defendant(s) / Respondent(s) (Continued)

C. Gauthier,
J. Gregory,
Tyler Huckelberry,
Unknown Austin,
Unknown Hearn,
R. Humphries,
William W. Lothrop,

**Defendant #2:**

C.    Defendant _____Daniel Sproul_____is employed as

(Name of Second Defendant)

Warden for F.C.I.-MARION_____

(Position/Title)

with Federal Bureau of Prisons_____

4500 Prison Road (Employer's Name and Address)
Marion, Illinois 62959
_____

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government?    ☒ Yes    ☐ No

If you answer is YES, briefly explain:

Daniel Sproul was, and still is, the Warden for F.C.I.-MARION.


**Additional Defendant(s) (if any):**

D.    Using the outline set forth above, identify any additional Defendant(s).

Defendant #3: R. McCaffrey is employed as Associate Warden (Acting Warden) with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #4: Michelle Daum is employed as Case Management Coordinator with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #5: R. Blair is employed as Special Investigations Services ("S.I.S.") Lieutenant with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion IL.

Defendant #6: Lindsey Owings is employed as Chief Psychologist with Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #7: Jennifer Weber is employed as Sex Offender Therapist with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #8: D. Huggins is employed as S.I.S. Agent with the Federal Bureau of Prisons at F.C.I.-MARION 4500 Prison Rd., Marion, IL.

Defendant #9: T. Robertson is employed as Supervisor of Education with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #10: C. Gauthier is employed as Sex Offender Management Program Coordinator (SOMPC) with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., IL.

Defendant #11: J. Gregory is employed as Sex Offender Therapist with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Defendant #12: Tyler Huckelberry is employed as Operations Lieutenant ("Lt.") with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Rd., Marion, IL.

Rev. 10/3/19

-2-

Additional Defendant(s) (Continued):

Defendant #13: Unknown Austin is employed as Correctional Officer ("C/O") with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Road, Marion, IL.

Defendant #14: Unknown Hearn is employed as C/O with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Road, Marion, IL.

Defendant #15: R. Humphries is employed as UNICOR Director with the Federal Bureau of Prisons at F.C.I.-MARION, 4500 Prison Road, Marion, IL.

Defendant #16: William W. Lothrop is employed as Federal Bureau of Prisons Director at the Federal Bureau of Prisons Headquarters in Washington, D.C. .

All of the above Defendants listed, except William W. Lothrop, are being sued in their INDIVIDUAL CAPACITIES. (Excluding ALSO, the UNITED STATES OF AMERICA)

The UNITED STATES OF AMERICA, DANIEL SPROUL, AND WILLIAM W. LOTHROP, R. HUMPHRIES are being sued in their OFFICIAL CAPACITIES.

- 2-A -

## II.    PREVIOUS LAWSUITS

A.    Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?   ☐Yes ☐No

B.    If your answer to "A" is YES, describe each lawsuit in the space below.  If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline.  **List ALL lawsuits in any jurisdiction and indicate the court where they were filed to the best of your ability,** including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)).  FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

1.    Parties to previous lawsuits:
Plaintiff(s):
Daniel Cobb

Defendant(s): Catricia Howard, L. Unruh-Parker, M. Mitstifer, Edna Lara, Amanda Stangl, A. Gallion, James Hayden, D. McNamera, Amy Morila, C. Cole, Antonietta Estrada, K. Garcia, Lorri Mitchell, Unknown Diabueno, M. Mack, D. Madrid, Ann Ash, S. Waite, S. Bass, B. Schuler, C. Schuler, J. Williams, J. Alexander, J. Cox, V. Ramsey, S. Johnson, B. Von Blanckensee, B. Byler, Ybarra, J. Hayden, A. Mulcahy, A. Cristinzio, J. Ciufo, S. Sargent, C. Radford, R. Carabajal, Haight-Biehler, and others.

2.    Court (if federal court, name of the district; if state court, name of the county):  District Court of Arizona, Tucson Division

3.    Docket number: 4:21-cv-00241-TUC-JAS

4.    Name of Judge to whom case was assigned:   James A. Soto

5.    Type of case (for example: Was it a habeas corpus or civil rights action?): Civil rights case

6.    Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Dismissed as MOOT; Appealed AFFIRMED

Rev. 10/3/19

-3-

7.    Approximate date of filing lawsuit:   June 4th, 2021

8.    Approximate date of disposition:

For the District Court: April 5th, 2023

9.    Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?"
Case DISMISSED as "MOOT", due to transfer out of USP-TUCSON.

## III.    GRIEVANCE PROCEDURE

A.    Is there a prisoner grievance procedure in the institution?  ☒ Yes    ☐ No

B.    Did you present the facts relating to your complaint in the prisoner grievance procedure?                                    ☒ Yes    ☐ No

C.    If your answer is YES,
    1.    What steps did you take?
        Filed all Informal Resolutions (BP-8s); Administrative Requests (BP-9s); Regional Office Appeals (BP-10s); Central Office Appeals (General Counsel, BP-11s)

    2.    What was the result?
        All Requests and Appeals were DENIED.

D.    If your answer is NO, explain why not.

E.    If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?                          ☐ Yes    ☐ No

F.    If your answer is YES,
    1.    What steps did you take?

Rev. 10/3/19

- 4 -

2.   What was the result?

G.   If your answer is NO, explain why not.

H.   Attach copies of your request for an administrative remedy and any
response you received.  If you cannot do so, explain why not:

It is the Defendants' burden to allege and present evidence that Plaintiff
has not exhausted all of his available Administrative Remedies.
Plaintiff now states, that he has exhausted all of his available
Administrative Remedies for the following Claims against these Defendants.
(Plaintiff HAS filed his Administrative Remedy History concerning the following
Claims in this Action multiple times in the recent past.)

Rev. 10/3/19

- 5 -

## IV.    STATEMENT OF CLAIM

A.    State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated. Do not include legal arguments or citations. If you wish to present legal arguments or citations, file a separate memorandum of law. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

Claim #1:  INTERFERENCE WITH ACCESS TO COURTS. (No Education "Moves" on Weekends)
     On 09/05/2023, Defendant T. Robertson, authored a Memorandum for the Inmate Population ("Memo."). The Memo. states that Sunday hours have changed (there are NO HOURS for the Education Department on Saturdays). In the Memo. she states that the leisure library will open during the following hours: 6:15am-9:30am, 10:30am-3:15pm. In addition, the law library (a separate room) will be open [unlocked] from 12:00pm-3:15pm. As of the date of filing this Second Amended Complaint, the law library has begun to be unlocked during 8:00am-9:15am as well.
     The leisure library is where inmates can access legal materials that are not available in the law library room. Such as, typewriters, the only inmate copier, law reference books, a printer to print law cases, and a scale to weigh out-going legal envelopes, with their contents enclosed.
     The Bureau of Prisons (B.O.P.) Policy Statement (PS) 1542.06, states in part, that: "The warden shall assign a staff member (ordinarily the Supervisor of Education) responsibility for the inmate library." ... "Staff responsible for the inmate library are to ensure that the library offers: [] #daily hours in proportion to inmate needs, with evening and weekend hours. The library shall be open for a minimum of three hours daily and eight hours over weekends." Thereby, the "changed" hours by Defendant T. Robertson was to follow B.O.P. PS 1542.06, giving proper access to the Education Department (i.e., Leisure Library)
     Plaintiff was given a due date in November 2023 by the Court of Appeals for the Ninth Circuit to file my Reply Brief, causing a deadline, and was not able to access the leisure library, due to the moves not taking place like they were directed to by Defendant T. Robertson.
     Plaintiff is requesting relief in the form of Injunctive Relief Order to the Warden, Daniel Sproul, to direct his employees to conduct the proper Education Moves directed in the Supervisor of Education's Memo, and ensure that there is proper staffing in the Education Department during 6:15am - 3:15pm, by Ordering Defendant T. Robertson to have employees IN the Education Department during the proper times.

Rev. 10/3/19

- 6 -

Claim #2: FIRST AMENDMENT RETALIATION; (Fired From UNICOR for Filing Claim #1) Due to the Temporal Proximity of filing the administrative remedy for Claim #1, and my termination of my UNICOR employment/enrollment. I firmly believe that I have had adverse actions taken towards me (terminated from UNICOR and moved out of "B" Unit (located across the hall from Education) due to filing, and not withdrawing my administrative remedy for Claim 8. I am requesting as relief that my "longevity" be reinstated. Which was removed after I was terminated from UNICOR for the so-called "appearence" of stealing, three days after I received the BP-9 response, and told to wait for six (6) months before coming back. This lack of longevity caused my "pay grade" to be reduced back the lowest pay grade (5 = .23/hour). When I was making .69/hour when I was wrongfully terminated.(3 = .69/hour)

Claim #3: 28 U.S.C. § 1331; ORDER William Lothron. to Define "VICTIM(S)" in ALL BOP POLICIES.

On 09/26/2013, my sentencing hearing was held. During the hearing, my instant offense victims' (who were sisters) family requested a "No-Contact" Order through the AUSA. The judge granted the order, orally pronouncing "The judgment should reflect that the defendant [Daniel Cobb] is not to have -- upon release and on supervised reelease -- is not to have any contact with the victims or the victims' family." The instant offense victims and their family are not related to anyone in my family.

My Presentence Investigation Report (PSIR) mentions uncharged conduct in Paragraph 45. Part of the uncharged conduct, is alleged conduct that I was sexual with my daughter. Though no charges were brought with her as the subject, no conviction involved her as well.

The Sex Offender Management Program Policy Statement ("PS") 5324.10, uses the term "victim(s)", but does not define this term. As a result, after arriving at FCI-MARION on 12/27/2022, I was making connected phone calls to my, now adult daughter (20 at the time), discussing her work and living in the United States, including whether or not to go to college. All calls were accepted and wanted by her. She, at no time, contacted FCI-MARION and requested that I be prevented from having communication with her. Yet, Defendants Lindsey Owings and Jennifer Weber decided to wrongly apply PS 5324.10 to me contacting my adult daughter by: (1) Improperly labeling my daughter as a "victim", instead of a "alleged victim"; (2) That I am violating my no-contact order by contacting my adult daughter, that is in my Judgment and Commitment Order; (3) Also, contacting my wife is a violation of my Judgment and Commitment Order. These actions originated at USP-TUCSON, through the Psychology Department. And continued here at FCI-MARION. Showing a pattern and practice of violating my fundamental Constitutional rights for exercising my rights with ordinary firmness, by prohibiting me from contacting all the members of my immediate family, who live abroad in a 3rd world country (Phillipines). Specifically, on 01/20/2023, Jennifer Weber authored a Correctional Management Plan (CMP) against me, due to her finding out that I was contacting my adult (20 yr old) daughter by telephone. Even though no conversations between my daughter and I were concerning anything sexual. On 03/02/2023, Lindsey Owings met with me about the CMP and disagreed with me that my Constitutional rights were being violated, applying the B.O.P. Policy 5324.10's use of the term "victim(s)" to my adult daughter. Thereby, I gave her notice that her subordinates and her are violating my parental rights and severing my parent-child relationship without any procedure and substantive Due Process, before and after, the decision. (First Amendment and Fourteenth Amendment.)

- 6-A -

Weber's and Owings's decision to violate my Constitutional rights are based on my PSIR, yet the PSIR does not name my daughter a "victim", but instead it describes allegations of abuse that are considered in the PSIR as "Offense Behavior Not Part of Relevant Conduct", in which there was no charges brought against me, and no conviction for the behavior.
To this day, I am prohibited from contacting my wife and adult daughter. (My immediate family, that wants and welcomes any contact with me.)
If I do contact my wife and/or my adult daughter, I would be subjected to: (1) an Incident Report; (2) Taken to SHU; (3) Placed on another CMP; (4) Potentially lose most of my commissary property; (5) Possibly placed in a cell with another violent AIC; (6) Found Guilty of the Incident Report and receive sanctions, up to loss of good time; (7) Waiting for the Regional Office to expunge it, all the while delaying my transfer to a institution closer to my parents. (Within 500 Driving Miles pursuant to the First Step Act.) All of the above occurred due to the Defendants' belief that I am violating my Judgment and Commitment Order, and that they are following BOP PS 5324.10, and PS 5110.17 since there is not a definition of the term "victim(s)". (Defendants D. Sproul, R. Blair, D. Huggins, R. McCaffrey, M. Daun, L. Owings, J. Weber, J. Gregory, C. Gauthier all share these beliefs.) The above Policies do not define the term "victim(s)" to mean "a person directly involved with a offense that a AIC has been found guilty of and sentenced for that offense. Be it, past or instant offenses. As this Court defines the term "victim(s)" and separates that term and the rights that accompany it, with the term "alleged victim(s)".

For the above reasons, I am requesting that this Court grant injunctive relief in the form of a ORDER directing William W. Lothrop, the Policy Maker for the B.O.P. to add the definition of the term "victim(s)" to any B.O.P. Policy that uses the term "victim(s)", including PS 5324.10, and PS 5110.17.

ILLINOIS STATE LAW Claim #4: FIRST AND FOURTEENTH AMENDMENTS VIOLATIONS; (My Wife, Lucila Urbaneja) While at USP-TUCSON, in AZ, on 10/07/2019, three days before my DHO hearing, my Staff Representive, Amanda Stangl, wrote a memorandum for the USP-Tucson warden to approve, prohibiting any and all communication between my wife and I. This memorandum was written in secrecy and guarded from me, after it's approval. I was not given written notice of this decision, even when I asked for written notice of the reasons for it. This memorandum recommended that all my wife's contact information be blocked, her mailing address, E-mail address, telephone numbers. Also, the memorandum prohibits any visits as well. Severing all ties with her. Amanda Stangl uses mal-information as reasons for this violation of my Constitutional rights. Specifically, (A) Lucila "is the mother of one of COBB's minor victims"; (B) "This request is being made in order to protect this minor victim"; (C) "and abide by various court orders, ordering no contact." Even going so far as stating that contacting my wife "to discuss the status of victim" as a reason, though there was no conviction with my family. On 01/24/2023, I requested my wife be added to my visitor list. She was added by my Counselor S. Hicks, that day. On 02/24/2023, my visitor list reflected that my wife was deleted (Un-approved). Before that, on 01/15/2023, I asked Defendant Michelle Daun if she believed that I should not contact my adult daughter, as well as my wife? She replied, "yes". On 01/20/2023, I was placed on a CMP, later that day I saw my wife's contact information was blocked.
I filed administrative remedies for my wife's contact information to be

- 6-B -

unblocked and her visiting to be restored. The warden's response included language consistent with Amanda Stangl's Memorandum blocking my wife's contact information and visiting, prohibiting me from having any contact with her. This language causing an "continuing violation" of my right to communicate with my wife, violating my Intimate and Familial Association protected by the First and Fourteenth Amendments of the U.S. Constitution. On 01/14/2023, S.I.S. Lt. R. Blair, called me to his office and told me that I am not allowed to contact my wife and adult daughter because his understanding, by M. Daun, that I am violating my Judgment and Commitment Order by contacting my wife and daughter. Also, D. Huggins threatened my life if he was to find out that I was in the SHU for having any contact. My administrative remedies were signed by R. McCaffrey denying my wife's contact be unblocked, along with her visits as well.

All of my responses involved using the term "victim" to describe my adult daughter, and citing my Judgment and Commitment Order's No Contact Order in my supervised release condition as the reasons for denial of my requests. For the reasons stated above, I am requesting relief of $300,000.00 in punitive damages against ALL listed above Defendants for violating my right to have a relationship with my wife.

**ILLINOIS STATE LAW Claim #5:** FIRST AND FOURTEENTH AMENDMENT; (Severing Parent-Child Relationship)

On 12/16/2022, after I was at Oklahoma Transfer Center, my telephone was unrestricted by the TRUST FUND Supervisor. I began contacting my adult daughter, then 20 yrs old. On 12/27/2022, I arrived at FCI-MARION, and continued to have wanted contact with her over the phone. Discussing her work, church, future education, and life in general. Nothing sexual was discussed. On 01/10/2023, Michelle Daun was served through the AZ Court a SEALED Declaration from the S.I.S. Lt. in USP-TUCSON. Where he discussed his beliefs that I should not have contact with my adult daughter and wife. On 01/14/2023, I was called to S.I.S. Lt. R. Blair's office, where he told me that I was prohibited from contacting my adult daughter, from today on, or I will be put in the SHU. S.I.S. Agent D. Huggins then added that if he found out I had contacted my daughter he would put me "under the SHU and no one would find [my] body until years later, after an anthropological dig." I took this as a death threat. The following day, I told Michelle Daun that I spoke with R. Blair, she said she knew and told him to speak with me about my adult daughter. I asked her if she believed that I should not contact my wife as well? She replied "yes". On 01/20/2023, I was placed on CMP by J. Weber, and told not to contact my wife and daughter, direct or indirectly. Later that day, my wife and adult daughter's contact information was blocked. On 01/24/2023, I requested my wife be added to my visitor list, she was added that day. I did notice that my adult daughter, who was already added to my visitor list, had her status changed to "EDT" (Un-Approved). This caused no available alternative means of communication with my adult daughter and my wife. On 02/24/2023, I saw that my wife and adult daughter were removed from my visitor list completely. On 03/02/2023, I met with Lindsey Owings. She gave me the records I requested and we discussed the CMP and my Constitutional rights concerning my wife and adult daughter. She did not agree that the CMP was violating any right, and that it was her and her staffs' job to prevent me from communicating with my wife and adult daughter. I filed administrative remedies concerning my adult daughter and I having contact. The responses all stated that my adult daughter was a "victim" and that I was violating my Judgment and Commitment Order by having contact with her. Contrary to the exhibits I provided from the First Circuit Court of Appeals.

As of this day, I have not been placed in the SHU, and do not desire to be placed there, where I might be killed by D. Huggins. For this reason, and due to the pattern of retaliation committed by employees at FCI-MARION, I am requesting that this Court be ready to intervene with any adverse tatics by these Defendants, and halt any adverse actions that I report to this Court during this litigation. (Minus a transfer to FCI-BUTNER, FCI-MARIANNA.)

Lastly, on 01/26/2024, Joshua Gregory met with me and told me not to contact my adult daughter, or I will be placed on another CMP, causing a Incident Report, and a trip to the SHU, where I would possibly be killed by D. Huggins, if he were to find out.

On 02/26/2024, C. Gauthier met with me, along with SOMP Treatment Specialist, SOMP-Psychologist where they all agreed and told me not to have contact with my wife and adult daughter, or I would be placed in SHU with a incident report. That days Psych. Record includes false info., stating that my adult daughter is one of my "victims of his sexual offenses". Which does not reflect the names of the victims listed in the Victim Notification System ("VNS"). All the above Defendants threatened me with a incident report, a transfer to the SHU, placement on a CMP, with D. Huggins going so far to threatening my life, if I contacted my adult daughter again. Silencing my Constitutional right to have and maintain Familial Relations [or Association], including severing my Parent-Child Relationship, and did not provide any opportunity to be heard in a meaningful way before or after violating my rights.

For all the above reasons, I am requesting Punitive Damages in the amount of $300,000.00 per each listed liable Defendant listed above. The reasons for these Punitive Damages is to: (1) Punish each liable Defendant, and deter any future Federal employee from interfering with my Constitutional rights; (2) Due to all the above Defendants have been made aware of my previous litigation, and that the previous Defendants were held to answer to the previous Complaint, in Tucson, Arizona.

**ILLINOIS STATE LAW Claim #6:** Civil Conspiracy.

Defendants AW R. McCaffrey, CMC Michelle Daun, S.I.S. Lt. R. Blair, S.I.S. Agent D. Huggins, Chief Psychologist Lindsey Owings, J. Weber, C. Gauthier, J. Gregory agreed among themselves to prohibit Plaintiff from contacting his adult daughter and wife, violating his fundamental Constitutional rights of Parent-Child Relationship, Familial Relations, and Intimate Association with his wife, concerning the status of their daughter.

Each had their own position and role to play in this conspiracy. Spelled out in previous claims (10-12).

AW McCaffrey's role was to sign for the Warden for any administrative remedies filed concerning Plaintiff's family. M. Daun had the S.I.S. Lt. R. Blair and D. Huggins to order Plaintiff directly not to contact his adult daughter and wife. J. Weber was to author and place on Plaintiff a CMP. L. Owings was to approve and agree with the CMP. C. Gauthier and J. Gregory were to remove the CMP, but still order the Plaintiff not to contact his wife and adult daughter. All joining forces and departments to prevent Plaintiff from having any contact with his immediate family.

Plaintiff requests $300,000.00 in Punitive Damages for the acts of Conspiracy against Plaintiff's Constitutional rights being violated.

It appears that CMC Daun headed this conspiracy because of the Declaration she recieved through the Arizona Court on 01/10/2023. Starting the above events to take place.

- 6-D -

Claim #7:  28 U.S.C. § 1331; Remove "Stalking"Memorandum in My Central File.
On September 29, 2022, I was given a stalking memorandum to sign, and it was placed in my "Privacy" Section of my Central File.
The reason for this "Stalking" Memorandum is because I was trying to get the DHO and other B.O.P. employees at USP-TUCSON to follow the Western Regional Director's response to Expunge the 397 Code Violation that was dated on April 26, 2020. I requested for this Memorandum to be removed, and my request was denied. My Central File is now with me at FCI-MARION, which causes this Warden, D. Sproul to be the proper Defendant to request this relief. As he is in control of the actions by his employees at FCI-MARION. Especially, due to the Code 397 being expunged by the DHO at FCI-MARION after the DHO at USP-TUCSON refused for 2 years.
The "Stalking" Memorandum was written after I was told by my Case Manager at USP-TUCSON to contact her, when my former Unit Manager told me that my case manager could expunge it, while I was speaking to a member of the Western Regional Office, during a visit at USP-TUCSON.
Therefore, having already discussed this subject at length with the DHO at USP-TUCSON, she was tired of answering e-mails about it, and directed a Lt. to write a "Stalking" Warning Memorandum against me. All for trying, with due diligence to try and get the Code 397 expunged, as directed by the Regional Director.
Plaintiff is requesting that the adverse, exaggerated "Stalking" memorandum be removed from his Central File's Privacy Folder, so that it cannot be used against him in the distant or near future.

Claim #8:  INJUNCTIVE RELIEF; Remove/Expunge Incident Report #3064567
On 07/13/2017, I was placed on a CMP due to exercising my Constitutional rights of maintaining a parent-child relationship. On 12/07/2017, an S.I.S. agent contacted SOMP Coordinator and asked if she could write me a Incident Report for asking my mother, over the phone, to send me photos from their cruise with my daughter to me. Using the CMP as the basis for the Incident Report ("I/R"). I was found guilty at the DHO Hearing, by the same DHO that expunged two I/Rs earlier for contacting my daughter.
On 12/27/2022, I arrived at FCI-MARION, and am now under a different warden, who has the ability and authority to expunge this I/R that I was wrongly found guilty of. I have a fundamental Constitutional right to contact and possess photographs of my daughter, who was not the subject of any charges, convictions, or sentencing.
I am requesting Injunctive Relief in the form of a ORDER directing Warden Daniel Sproul to EXPUNGE I/R #3064567 from my Central File, and BOP Director, William Lotrop to expunge/remove from my Central File any adverse mentioning of contact with my wife and daughter, as well ORDERING the same to Warden Daniel Sproul.

- 6-E

## V.    REQUEST FOR RELIEF

State exactly what you want this court to do for you.  If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255.  Copies of these forms are available from the clerk's office.

Plaintiff Requested Relief(s) is: (1) for the Court to provide Injunctive Relief through an Order directing the Daniel Sproul to direct his employees to ensure that the Education Moves be conducted on Sunday mornings; (2)Plaintiff's longevity (hire date) be restored to his original date of March 6th, 2023 in UNICOR's database; (3) An Injunctive ORDER for William Lothrop to define the term "victim(s)" in all B.O.P. Policy Statements where the term "victim(s)" is used; (4) Injunctive Relief directing William W. Lothrop and Warden Daniel Sproul to direct his employees to remove ALL adverse documents concerning Plaintiff's contact with his family (Mother, Wife, and daughter); (5) Declaratory ORDER (pre-enforcement) to William W. Lothrop to direct all of his relevant employees to halt

(Continued on PAGE 7-A)

## VI.    JURY DEMAND (*check one box below*)

The plaintiff ☒ does  ☐ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on: ___February 6th, 2025___
(date)

_____
Signature of Plaintiff

Daniel Cobb
_____
Printed Name

_____
Street Address

#24773-171
_____
Prisoner Register Number

_____
City, State, Zip

_____
Signature of Attorney (if any)

Rev. 10/3/19

- 7 -

## V. REQUEST FOR RELIEF (Continued)

any future adverse actions against Plaintiff at this (and future) institution(s) during the rest of Plaintiff's incarceration, when he contacts his family (immediate or otherwise);

(6) Injunctive ORDER directing Daniel Sproul (and/or William Lothrop) to direct his employees to EXPUNGE Incident Report #3064567 from Plaintiff's Central file;

(7) Injunctive Pre-Enforcement ORDER against William W. Lothrop directing his employees to stop any future harassment towards Plaintiff (or Plaintiff's family's contact information) when Plaintiff contacts his family (immediate or extended);

(8) Injunctive ORDER against Daniel Sproul and William W. Lothrop directing Plaintiff's wife's and adult daughter's contact information be UNBLOCKED, and/or RESTORE Plaintiff's Public Messaging (E-Mail) privilege to ensure that Plaintiff will have an available alternative means of communication with Plaintiff's wife and adult daughter.

(9) Punitive Damages in the amount of $300,000.00 against ALL liable Defendant(s) for violating Plaintiff's fundamental Constitutional right(s) (Familial Relations (Association) and Parent-Child Relationship, Parental Rights) with malicious intent or callously disregarding Plaintiff's fundamental Constitutional rights under the U.S. Constitution.

- 7-A -

However, C.A. also asserts that his constitutional rights were violated during the entire (near) four-month period of government-forced separation from his parents. This forced separation implicates substantive due process, or more specifically C.A.'s constitutional right to **familial relations**. 14

{2000 U.S. App. LEXIS 41}

The Supreme Court has long recognized as a component of substantive due process the right to **familial relations**. See Prince v. Massachusetts, 321 U.S. 158, 166, 88 L. Ed. 645, 64 S. Ct. 438 (1944); Meyer v. Nebraska, 262 U.S. 390, 399, 67 L. Ed. 1042, 43 S. Ct. 625 (1923); Santosky v. Kramer, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982) (there is "a fundamental liberty interest of natural parents in the care, custody, and management of their child."). See also, Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000) ("Parents and children have a well-elaborated constitutional right to live together without governmental interference."); Croft v. Westmoreland County Children and Youth Services, 103 F.3d 1123, 1125 (3d Cir. 1997) ("We recognize the constitutionally protected liberty interests that parents have in the custody, care and management of their children."). See generally Troxel v. Granville, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). The Due Process Clause "includes a substantive component that provides heightened protection against government interference with certain fundamental{2000 U.S. App. LEXIS 42} rights and liberty interests." Id. 120 S. Ct. at 2060. These decisions recognize that the right of a man and woman to marry, and to bear and raise their children is the most fundamental of all rights--the foundation of not just this country, but of all civilization. Wisconsin v. Yoder, 406 U.S. 205, 232, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children."); id., ("This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."); Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 503, 52 L. Ed. 2d 531, 97 S. Ct. 1932 (1977) ("The institute of the family is deeply rooted in this Nation's history and tradition."). Equally fundamental is the substantive due process right of a child to be raised and nurtured by his parents. See Santosky v. Kramer, 455 U.S. 745, 760, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982) ("Until the state proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of the natural relationship. {2000 U.S. App. LEXIS 43} ") (emphasis added); J.B. v. Washington County, 127 F.3d 919, 925 (10th Cir. 1997) ("We recognize that {235 F.3d 1019} the forced separation of parent from child, even for a short time, represents a serious infringement upon both the parents' and child's rights.") (internal quotations omitted); Wooley v. City of Baton Rouge, 211 F.3d 913, 923 (5th Cir. 2000) ("a child's right to family integrity is concomitant to that of a parent"). 15 Thus, substantive due process provides the appropriate vehicle for evaluating the constitutionality of the nearly four-month government-forced separation of C.A. from his parents. See, e.g., J.B. v. Washington County, 127 F.3d 919, 927 (10th Cir. 1997) ("It is evident that there was interference with plaintiffs' rights of familial association because L.B. was physically removed from her home and from her parents for a period of almost 18 hours, which included an overnight stay in a pre-arranged shelter home."); Croft, 103 F.3d at 1125 ("The due process clause of the Fourteenth Amendment prohibits the government from interfering in the familial relationship unless the government adheres to the requirements of procedural{2000 U.S. App. LEXIS 44} and substantive due process.").

A07CASES                                          1

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Daniel Cobb #24773-171
Federal Correctional Institution – MARION
Post Office Box 1000
Marion, Illinois 62959

**CERTIFIED MAIL®**

9589 0710 5270 1221 1017 26



MAIL CLEARED US MARSHALS

Special
Mail

Legal
Mail

⇔24773-171⇔
Clerk Of Court
U.S. Courthouse
750 Missouri AVE
ROOM 104
E Saint Louis, IL 62201
United States



RECEIVED
FEB 14 2025
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

Warden
United States Penitentiary
Marion, IL 62959
Date : — FEB 0 6 2025

The enclosed letter was processed through
special mailing procedures for forwarding to you.
The letter has neither been opened nor inspected.
If the writer raises a question or problem over
which this facility has jurisdiction,
you may wish to return the material for
further information on clarification.
If the writer encloses correspondence for
forwarding to another addressee, please return
enclosure to the above address.