IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DANIEL COBB, #24773-171,** *Individual and Third Party on behalf of Lucila Urbaneja (Wife and Third Party of J.C. (Adult Daughter)),*  **Plaintiff,**  vs.  **DANIEL SPROUL, R. McCAFFREY, MICHELLE DAUN, R. BLAIR, LINDSEY OWINGS, JENNIFER WEBER, D. HUGGINS, C. GAUTHIER, JOSHUA GREGORY, and WILLIAM K. MARSHALL, III,**  **Defendants.** | Case No. 24-cv-02392-JPG |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Daniel Cobb filed a Third Amended Complaint (Doc. 44) pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and the Administrative Procedures Act (APA), 5 U.S.C. §§ 551-59, 701-706. *Id*. Plaintiff is an inmate in the custody of the Federal Bureau of Prisons (BOP), and he is currently housed at the Federal Correctional Institution in Butner, North Carolina (FCI-Butner). He brings claims against individual officers at the Federal Correctional Institution in Marion, Illinois (FCI-Marion) for allegedly interfering in his relationships with his adult daughter and wife beginning in January 2023. *Id*. at 1-13. Plaintiff seeks relief for violations of his rights under the First, Fifth, and/or Fourteenth Amendments. *Id*. at 8.

1

The Third Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen and dismiss portions that are legally frivolous or malicious, fail to state a claim, or seek money damages from an immune defendant. 28 U.S.C. §§ 1915A(a)-(b). At this juncture, the factual allegations are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### Third Amended Complaint

Plaintiff sets forth the following allegations in the Third Amended Complaint (Doc. 44, pp. 8-10): Defendants subjected Plaintiff to an unlawful no contact order that prohibited him from communicating with his adult daughter and wife beginning on or around January 14, 2023 (2023 no contact order). *Id*. at 8. When he transferred to FCI-Marion on December 27, 2022, Plaintiff was allowed contact with both family members. He had telephone contact[1] with his wife and telephone *and* mail contact with his adult daughter. *Id*.

On January 10, 2023, Plaintiff's unit team was served with a document from a non-defendant's attorney containing the statement of an unidentified "S.I.S. Lt." indicating that Plaintiff should not have contact with his adult daughter or wife based on a prior no contact order entered in his criminal case in Maine on or around September 26, 2013 (2013 no contact order). *Id*. The Court in that case entered the no contact order against Plaintiff for the "instant offense victims and their family." *Id*. This included two sisters in the same family that are unrelated to Plaintiff, his wife, and his daughter. *Id*. at 8, 10. The Government never called his wife or daughter to testify in the criminal case because they were not considered victims or members of the victims' family. *Id*.

---

[1] His wife's mailing address in the Philippines was blocked. *Id*.

2

On January 14, 2023, Special Investigations Service (S.I.S.) Members Blair and Huggins met with Plaintiff to discuss the statement of the S.I.S. lieutenant. Plaintiff explained that the 2013 no contact order did not prohibit contact with his daughter and wife because neither family member was a victim of his instant offense or otherwise subject to the 2013 no contact order. *Id*. Blair and Huggins did not believe him. *Id*. The same day, they created a new no contact order (2023 no contact order) that prohibited him from having direct or indirect contact with his adult daughter or wife while incarcerated. Plaintiff was warned that contacting either person would result in an incident report and placement in the special housing unit (SHU). *Id*. at 9. Huggins further warned Plaintiff that if he ever transferred into the SHU for contacting either family member, Huggins would personally "place [Plaintiff's] body UNDER THE SHU and no one would find [his] body until an anthropological dig years later." *Id*. This threat caused Plaintiff to fear high-ranking staff at FCI-Marion, and he reported it to Defendant Weber on January 31, 2023. *Id*.

On January 15, 2023, Plaintiff spoke with Defendant Michelle Daun about the 2023 no contact order issued one day earlier. Daun admitted that she directed Blair and Huggins to speak with Plaintiff. Daun later responded to his grievances about the 2023 no contact order by making it clear that she directed them to issue the no contact order. Plaintiff blames Daun for interfering with his intimate familial associations. Defendant McCaffrey also approved a memorandum that prohibited Plaintiff from using public messaging, computers, printers, telephones, and/or telephone numbers to contact his wife and daughter. *Id*.

On January 20, 2023, Jennifer Weber placed Plaintiff on a correctional management plan (CMP) for having contact with his adult daughter even though his contact was not sexual. Plaintiff again explained that his daughter was not the subject of his criminal conviction or the 2013 no contact order. Weber found his story unbelievable, even after failing to investigate the matter.

3

Later the same day, Plaintiff discovered that his daughter and wife's contact information was blocked. *Id*.

On March 2, 2023, Plaintiff met with Defendant Linsey Owings, and they discussed the CMP. *Id*. Owings concurred with Weber, saying that it was the staff's job to keep Plaintiff away from his adult daughter. When Plaintiff reminded Owings that his daughter was not the victim in his criminal case or subject to the 2013 no contact order, Owings explained that the Court needed to communicate that information to Owings. *Id*.

On January 26, 2024, Joshua Gregory met with Plaintiff and again directed him to have no contact with his adult daughter and wife. Gregory warned that further contact would result in an incident report, placement in the SHU, and injury or death by Huggins. *Id*.

On February 26, 2025, Plaintiff met with Gauthier, Gregory, and Weber. *Id*. at 10. He showed them the court paperwork which proved the 2013 no contact order did not include his wife and adult daughter. The three defendants still refused to believe him, saying they must comply with BOP PS 5324. *Id*.

Plaintiff blames this misunderstanding on BOP Policy Statement 5324.10 and others governing the Sex Offender Management Program (SOMP) that offer no definition of "victim(s)." *Id*. BOP Director William K. Marshall III has the authority to provide a clear definition of this term in all BOP Policy Statements. Instead, Warden Daniel Sproul has signed various memos and administrative remedy forms that improperly interpret the term "victim(s)" to include Plaintiff's adult daughter and wife. *Id*. at 10. Plaintiff seeks a Court order requiring BOP Director Marshall to provide a clear definition of "victim(s)" in all BOP Policy Statements. He also seeks money damages from each individual defendant for unlawfully interfering with his intimate familial relationships with his adult daughter and wife by enforcing the 2023 no contact order. *Id*.

### Discussion

The Third Amended Complaint (Doc. 44) includes the following three claims:

**Count 1:** Defendant Huggins threatened to kill Plaintiff for contacting his adult daughter and wife while the other Defendants failed to protect him from this threat of serious harm, in violation of the Eighth Amendment.

**Count 2:** Defendants unlawfully interfered with Plaintiff's familial relationships by prohibiting contact with his wife and adult daughter beginning on or around January 14, 2023, in violation of the First, Fifth, and/or Fourteenth Amendments.

**Count 3:** Defendants misinterpreted the term "victim(s)," as used in BOP Policy Statements and Plaintiff's 2013 Judgment and Commitment Order (2013 no contact order), to include Plaintiff's adult daughter and wife and to justify a new no contact order (2023 no contact order), warranting relief under the Administrative Procedures Act.

**The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.**

### Multi-Plaintiff Action

Plaintiff brings these claims on behalf of himself, his wife (Lucila Urbaneja), and his adult daughter (J.C.). However, the Court finds no indication that his wife or adult daughter intends to bring this action or any claims herein. Neither individual signed the Complaint (Doc. 1), First Amended Complaint (Doc. 18), Second Amended Complaint (Doc. 34), or Third Amended Complaint (Doc. 44). Neither individual prepaid the filing fee nor requested permission to proceed without prepayment of the full fee. Plaintiff Cobb is the only person who signed all Complaints (Docs. 1, 18, 34, and 44), filed a motion for leave to proceed *in forma pauperis* (Doc. 2), and filed additional motions (*e.g.*, Docs. 3, 4, and 5). By all indications, Plaintiff Cobb is proceeding alone. As a *pro se* prisoner litigant, he cannot represent a group of plaintiffs. *See Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 831 (7th Cir. 1986); FED. R. CIV. P. 11. This action involves one plaintiff:

Daniel Cobb. Plaintiff's wife (Lucila Urbaneja) and adult daughter (J.C.) are considered dismissed without prejudice from this action.

### Counts 1 and 2

Counts 1 and 2 involve claims for money damages against individual federal officers who allegedly violated his constitutional rights with threats of bodily harm (Count 1) and interference with his familial relationships (Count 2). Both claims arise under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 392 (1971). In *Bivens*, the United States Supreme Court recognized an implied damages remedy against individual federal agents who conducted an unlawful search and seizure in violation of the Fourth Amendment. *Id*. In the decade that followed, the Supreme Court expanded this remedy twice. In *Davis v. Passman*, 442 U.S. 228 (1979), the Court recognized an implied damages remedy for a Fifth Amendment gender discrimination claim. And, in *Carlson v. Green*, 446 U.S. 14 (1980), the Court extended the remedy to cover an Eighth Amendment medical deliberate indifference claim. The Court has since declined to recognize a *Bivens*-type damages remedy in any other context.

On the contrary, the Supreme Court has cautioned lower courts against further expansion of this remedy to cover any new contexts or category of defendants. *Egbert v. Boule*, 596 U.S. 482, 491-92 (2022). Now, a district court presented with a *Bivens*-type claim must consider whether it differs from those claims the Supreme Court previously recognized in *Bivens*, *Passman*, and *Carlson* and, if so, whether "special factors" counsel against expansion of the implied damages remedy to cover a new context or new category of defendants absent congressional action. *Id*.; *Ziglar v. Abassi*, 582 U.S. 120, 139-40 (2017). If there is any reason to think that Congress is in a better position than the federal courts to create a damages remedy, the district court must refrain from recognizing a *Bivens*-style remedy. *Egbert*, 596 U.S. at 491-92.

Count 1 involves a claim that a prison official made a death threat against the plaintiff while he was housed at FCI-Marion and other officers failed to intervene and protect him from harm in violation of the Eighth Amendment. (Doc. 44). The Supreme Court recently found that an Eighth Amendment claim of excessive force against a prison guard presented a new context and special factors counseled against expansion of an implied damages remedy into that context. *See Goldey v. Fields*, 606 U.S. 942, 944 (2025). The Seventh Circuit Court of Appeals reached similar conclusions in cases against prison officials for using excessive force against an inmate and for failing to protect an inmate from its use. *See Ajaj v. Fozzard*, App. No. 23-2219, 2024 WL 4002912 (7th Cir. Aug. 30, 2024) (Eighth Amendment excessive force claim against prison guard presents new context); *Sargent v. Barfield*, 87 F.4th 358, 366 (7th Cir. 2023) (Eighth Amendment failure-to-protect claim against inmate's case manager presents new context). For the same reasons the Supreme Court and Seventh Circuit declined to recognize a *Bivens*-style remedy against prison officials in *Goldey*, *Ajaj*, and *Sargent*, this Court declines to do so here. Plaintiff's claim presents a new context and a new category of defendants. Moreover, the BOP's administrative remedies process provides an avenue to relief for his complaints. Accordingly, Count 1 shall be dismissed with prejudice as foreclosed by *Egbert, Ajaj*, and *Sargent*.

Count 2 involves a claim against prison officials for interfering with Plaintiff's close familial contacts, in violation of his rights under the First, Fifth, and/or Fourteenth Amendments. The exact constitutional basis for the claim is not identified. However, it is clearly unlike the Fourth Amendment claim at issue in *Bivens*, Fifth Amendment claim at issue in *Passman*, or Eighth Amendment claim at issue in *Carlson*. These claims do not arise from a federal inmate's claim of interference with familial relations. Plaintiff's claim presents a new context and involves a new category of defendants, *i.e.*, officers working in the prison's sex offender management

program. Moreover, the BOP's administrative remedies process provides a path to relief for inmate grievances pertaining to the conditions of their confinement, including the plaintiff's complaint here, regardless of whether Plaintiff obtained the relief he sought. Count 2 is also dismissed with prejudice as foreclosed by *Egbert, Abassi,* and related precedent.

### Count 3

The Administrative Procedures Act (APA), 5 U.S.C. §§ 551-59, allows parties adversely impacted by agency actions to request judicial review of a decision, *unless*: (a) the action is committed to the discretion of the agency by law; or (b) another federal statute specifically precludes review. 5 U.S.C. §§ 701(a), 702. The Federal Bureau of Prisons is considered an "agency." *See* 5 U.S.C. § 701(b)(1) (agency is "each authority of the Government of the United States"). A strong presumption favors judicial review of agency actions. *See Mach Mining, LLC v. EEOC*, 135 S.Ct. 1645, 1651 (2015) ("Congress rarely intends to prevent courts from enforcing its directives to federal agencies" and so there is a "strong presumption favoring judicial review of administrative action." (citation omitted)). *See also Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (APA can be used to challenge various aspects of prison life, including application of prison rules to individual prisoners).

Plaintiff specifically challenges the BOP's definition of "victim(s)" in all BOP Policy Statements (specifically Policy Statement 5324.10) and as applied in his 2013 and 2023 no contact orders to his wife and adult daughter. He seeks an order requiring BOP Director Marshall to clearly define the term to exclude both family members from his no contact orders, so that he may resume contact with his wife and daughter.

Count 3 shall receive further review. The proper defendant for an APA claim is generally the Federal Bureau of Prisons. *White v. Henman*, 977 F.2d 292, 293 (7th Cir. 1992) (BOP

appropriate defendant for APA claim). Plaintiff does not name the BOP as a defendant. However, he names BOP Director William Marshall III (official capacity) as a defendant, and the Court deems this sufficient. Although he cannot obtain monetary relief for a claim brought under the APA, Plaintiff can pursue his request for injunctive relief. *See* 5 U.S.C. § 702; *Veluchamy v. FDIC*, 706 F.3d 810, 812 (7th Cir. 2013) (APA authorizes injunctive relief and not money damages).

Plaintiff seeks to resume contact with his wife and adult daughter at his present facility. Plaintiff is currently housed at FCI-Butner. Given this, a transfer of venue may be in order. For now, the Court will proceed with service of this suit on BOP Director Marshall, in an official capacity only, leaving it to the parties to file a motion seeking a change of venue to the federal judicial district that encompasses FCI-Butner, if appropriate. Count 3 shall be dismissed without prejudice against all other defendants.

## Disposition

**IT IS ORDERED** that the Third Amended Complaint (Doc. 44) survives screening under 28 U.S.C. § 1915A. **COUNT 3** will proceed against **WILLIAM K. MARSHALL, III**, in an official capacity only.

**IT IS ORDERED** that Plaintiff's wife (Lucila Urbaneja) and adult daughter (J.C.) are **DISMISSED** without prejudice as Plaintiffs / parties in CM/ECF.

**IT IS ORDERED** that **COUNTS 1** and **2** against **ALL DEFENDANTS** are **DISMISSED** with prejudice for failure to state a claim under existing United States Supreme Court precedent. **COUNT 3** is **DISMISSED** without prejudice against all defendants, except William K. Marshall, III (official capacity).

The Clerk's Office is **DIRECTED** to **TERMINATE** Plaintiff's wife (Lucila Urbaneja) and adult daughter (J.C.) as Plaintiffs and **ALL DEFENDANTS, except WILLIAM K. MARSHALL, III,** as parties in CM/ECF.

With regard to Count 3, the Court hereby **DIRECTS** the Clerk of Court to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on **WILLIAM K. MARSHALL, III**; the Clerk shall issue the completed summons. The United States Marshals **SHALL** serve Defendant pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[2] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service. In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Third Amended Complaint (Doc. 44), and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Third Amended Complaint (Doc. 44), and this Memorandum and Order.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Third Amended Complaint (Doc. 44) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendant need only respond to the issues stated in this Merit Review Order**.

---

[2] Rule 4(e) provides, "an individual – other than aminor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 10/22/2025**

                                                  s/ J. Phil Gilbert
                                                  **J. PHIL GILBERT**
                                                  **United States District Judge**

### Notice to Plaintiff

Once identified, the Court will take the necessary steps to notify the Defendant of your lawsuit and serve them with a copy of your Third Amended Complaint. After service has been achieved, Defendant will enter an appearance and file an Answer to your Third Amended Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendant's Answer, but it is entirely possible that it will take **90 days** or more. When Defendant has answered, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendant before filing any motions, to give the Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.