**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DANIEL COBB, #24773-171,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Case No. 24-cv-02392-JPG** |
| | ) |
| **WILLIAM K. MARSHALL, III,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

This matter is before the Court for a decision on Defendant William K. Marshall, III,'s Motion to Change Venue to the United States District Court for the Eastern District of North Carolina (Doc. 51); Defendant Marshall's Motion to Dismiss for Failure to State a Claim (Doc. 56); and Plaintiff Daniel Cobb's Motion to File Response In Opposition to Motion to Dismiss with Excess Pages (Docs. 61 and 61-1). As explained below, the Motion to Change Venue shall be **GRANTED**, and the other motions **TRANSFERRED** to the Eastern District of North Carolina for all further action.

**Background**

Plaintiff Daniel Cobb is an inmate in custody of the Federal Bureau of Prisons (FBOP). At the time he filed this action, Plaintiff was housed at the Federal Correctional Institution in Marion, Illinois (FCI-Marion). He has since transferred to the Federal Correctional Institution in Butner, North Carolina (FCI-Butner). Plaintiff filed five separate complaints (Docs. 1, 18, 23, 44, and 48-1) before this matter survived screening under 28 U.S.C. § 1915A.

The Third Amended Complaint (Doc. 44) now controls. In it, Plaintiff complains of a no contact order that prohibited communication with his wife and adult daughter beginning

1

January 14, 2023 (2023 no contact order). *Id*. at 8. Prior to that time, Plaintiff was allowed contact with both family members at FCI-Marion.[1] *Id*. This changed on January 10, 2023, when Plaintiff's unit team was served with a document from a non-defendant's attorney advising prison officials that Plaintiff should have no contact with his wife or daughter based on a prior no contact order entered in his criminal case in Maine on September 26, 2013 (2013 no contact order). *Id*.

The 2013 no contact order prohibited Plaintiff from communicating with the "instant offense victims and their family." *Id*. This included two sisters unrelated to Plaintiff, his wife, and his daughter. *Id*. at 8, 10. When Plaintiff explained that his wife and adult daughter were not among the "instant offense victims" mentioned in the 2013 no contact order, FCI-Marion officials created a new no contact order (2023 no contact order). The 2023 no contact order extended to all communication with his adult daughter and wife during his incarceration. *Id*. at 9. When Plaintiff had consensual, non-sexual contact with his adult daughter a few days later, he was placed on a correctional management plan on or around January 20, 2023. *Id*.

Plaintiff blames this misunderstanding on FBOP Policy Statement 5324.10 and others governing the Sex Offender Management Program (SOMP) that offer no definition of "victim(s)." *Id*. He asserts that FBOP Director William K. Marshall, III, has the authority to provide a clear definition of this term in all FBOP Policy Statements. Because there is no clear definition, FCI-Marion Warden Daniel Sproul signed various memos and administrative remedy forms that improperly interpret the term "victim(s)" to include Plaintiff's adult daughter and wife. *Id*. at 10. Plaintiff requests a Court order requiring FBOP Director Marshall to provide a clear definition of "victim(s)" in all FBOP Policy Statements. *Id*.

---

[1] Plaintiff transferred to FCI-Marion on December 27, 2022, so he was allowed contact for approximately 3 weeks. *Id*.

After screening the Third Amended Complaint, the Court allowed Plaintiff to proceed with a single Administrative Procedure Act (APA) claim (Count 3) against FBOP Director Marshall (official capacity only) for failing to clearly define "victim(s)" in FBOP Policy Statements and causing FBOP officials to interpret the 2013 no contact order and/or 2023 no contact order to include his wife and adult daughter. The Court limited Plaintiff's claim to a request for injunctive relief against the FBOP Director Marshall, in his official capacity. All other parties, claims and requests for relief were dismissed.[2] *Id*. In addition, the Court noted that Plaintiff was no longer housed at FCI-Marion. He transferred to FCI-Butner before filing the Third Amended Complaint. As such, the Court indicated that a change of venue may be warranted. *Id*. FBOP Director Marshall appeared in this matter and requested a change of venue.

## Motion to Change Venue (Doc. 51)

FBOP Director Marshall seeks a transfer of this case to the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404(a). (Doc. 51). In support of this request, Defendant points out that Plaintiff transferred to FCI-Butner on June 17, 2025 (Doc. 43) and filed the Third Amended Complaint on July 21, 2025, seeking injunctive relief for ongoing harm caused by the definition of "victim," or lack thereof, in FBOP Program Statements at FCI-Butner (Doc. 44). Defendant argues that the case now lacks a meaningful connection to the Southern District of Illinois. FCI-Butner's warden and staff are now responsible for applying the FBOP policy statements to the 2013 no contact order and 2023 no contact order, not FCI-Marion. Witnesses who can offer evidence about current communication restrictions are located there. Finally,

---

[2] The Court dismissed all other claims, defendants, and requests for relief. This includes claims Plaintiff attempted to bring on behalf of his wife and daughter; *Bivens* claims for money damages against the individual officers who allegedly restricted communications with his wife and adult daughter at FCI-Marion (Counts 1 and 2); and claims for money damages under the APA, *see* Doc. 45, p. 9 (citing 5 U.S.C. § 702; *Veluchamy v. FDIC*, 706 F.3d 810, 812 (7th Cir. 2013) (APA authorizes injunctive relief and not money damages)).

Defendant argues that because this case is still in its early stages, the parties will not be prejudiced by a transfer of venue. *Id.*

Plaintiff opposes the motion based on a faulty assertion that he is entitled to money damages for his claims against the individual federal agents in Counts 1 and 2 and/or FBOP Director Marshall in Count 3. (Doc. 55). He also asserts that his request for injunctive relief does not pertain to his current facility. *Id.* This comment prompted FBOP Director Marshall to file a Motion to Dismiss for Failure to State a Claim, arguing, in part, that no claims remain now that Plaintiff has abandoned his request for injunctive relief. (Doc. 56). Plaintiff responded by reiterating and/or reinstating his request for injunctive relief and adding that FCI-Butner's warden recently denied his request for reinstatement of contact with his adult daughter and wife based on the no contact orders and PSR. (Doc. 61-1, p. 26).

**Discussion**

Under 28 U.S.C. § 1404, a district court may transfer a civil action "[f]or the convenience of parties and witnesses" and "in the interest of justice" to any other district or division where it might have been brought or by consent of the parties. 28 U.S.C. § 1404(a). In addition, § 1391(b)(2) provides for venue in a district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Transfer of venue is warranted under both statutes.

The Third Amended Complaint now focuses on a single claim against FBOP Director Marshall (official capacity only) for failing to clearly define "victim(s)" in FBOP Policy Statements and causing FBOP officials to interpret the 2013 no contact order and/or 2023 no contact order to include Plaintiff's wife and adult daughter. Plaintiff was only allowed to proceed with a request for injunctive relief. This request arises from harm that began at FCI-Marion and

4

continues at FCI-Butner, where Plaintiff is currently housed.  This is the same facility where Plaintiff was housed when he filed the Third Amended Complaint.  The witnesses and evidence necessary to decide whether injunctive relief is warranted can be found there.  FCI-Butner is located in Granville County, North Carolina, and situated in the Eastern District of North Carolina.

The interests of justice are served by transferring this case.  Consideration of this matter will involve an examination of the ongoing interpretation and application of the definition of "victims" in FBOP Program Statements, and any injunctive relief ordered will necessarily be carried out at Plaintiff's present facility, *i.e.*, FCI-Butner.  *See Carillo v. Darden*, 992 F. Supp. 1024, 1026 (N.D. Ill. 1998) ("The administration of justice is served more efficiently when the action is litigated in the forum that is 'closer to the action.'").  Current events, evidence, and witnesses who can speak to these issues are located in Granville County, North Carolina. The desirability of resolving this matter in the federal judicial district where these events are ongoing favors transfer.

Moreover, the parties will not be prejudiced by this transfer.  The case remains in its infancy.  Following several rounds of screening and amendments, Plaintiff's Third Amended Complaint survived preliminary review on October 22, 2025.  (Doc. 45).  No answer has been filed.  To the extent FBOP Director Marshall intends to bring a jurisdictional challenge or pursue his motion to dismiss (Doc. 56), he may do so in the Eastern District of North Carolina.

For the convenience of the parties and in the interests of justice, the Court will grant Defendant's motion and transfer this case to the United States District Court for the Eastern District of North Carolina.  *See* 28 U.S.C. § 1404(a); 28 U.S.C. § 113(a).

**Conclusion**

Defendant's Motion for Change of Venue (Doc. 51) is **GRANTED** under 28 U.S.C. § 1404(a). This action is **TRANSFERRED** to the United States District Court for the Eastern District of North Carolina for such further proceedings as that court may deem appropriate. 28 U.S.C. § 113(a).

Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 56) and Plaintiff's Motion to File Response in Opposition to Motion to Dismiss with Excess Pages (Docs. 61 and 61-1) are **TRANSFERRED** for such further action as the Court deems appropriate.

Plaintiff filed an *unsigned* Motion to File Under Seal (Doc. 61-1, p. 102). If he seeks to seal any portion of the record, Plaintiff may re-file a *signed* Motion to File Under Seal in the Eastern District of North Carolina.

**The Clerk's Office is DIRECTED to TERMINATE the pending motions at Doc. 56, 61, and 63 and SEND both parties a courtesy copy of the docket sheet from CM/ECF, along with this Order**.

**IT IS SO ORDERED.**

**DATED: 8/10/2026**

**J. PHIL GILBERT**
**United States District Judge**

6